## BAUMBOY v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. February 20, 1928.

No. 5145.

1. Searches and seizures ⊚⟳3(4)—Affidavit of narcotic agent as to seeing drug addicts going to or from premises held insufficient to constitute probable cause for search warrant.

Affidavit of narcotic agent, stating that he had seen known addicts going to and from premises, and alleging knowledge as to accused being a dealer in narcotic drugs, *held* insufficient to constitute probable cause for issuance of search warrant.

2. Arrest ⊚⟳71—Seizure of narcotics cannot be justified as incident of illegal arrest.

Seizure of narcotics under invalid search warrant cannot be justified as an incident of arrest of accused, where arrest was no more defensible than illegal search.

3. Poisons ⊚⟳9—Instruction on narcotic addicts' habit in assisting one another in getting drug held error.

In prosecution for possession of narcotics, and for receiving and concealing drugs knowing they had been unlawfully imported, instruction relative to habits of addicts in assisting one another in procuring drugs *held* error.

4. Criminal law ⊚⟳660—Exception because expressions of court and statement to jury were prejudicial to defendant's interests in toto held sufficient.

Exception consisting of objection to expressions of court and to statement of court to jury on the ground that the same was prejudicial to interests of defendant in toto *held* sufficient, though some of matters complained of in instruction were more prejudicial than others.

In Error to the District Court of the United States for the Northern Division of Northern District of California.

Harry Baumboy was convicted of possession of morphine with intent to sell the same, and of fraudulently and feloniously concealing the drugs, knowing they had been imported contrary to law, and he brings error. Reversed, with directions.

Donald McKisick, of Sacramento, Cal., for plaintiff in error.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. In the first count of the indictment in this case it is charged that defendant unlawfully had in his possession, with intent to sell the same, morphine described as being a package of 40 grains and a can of 4 grains, and in the

second count, concerning the same morphine, that he fraudulently and feloniously received and concealed the drugs, well knowing they had been imported into the United States contrary to law. There was a conviction on both charges, followed by a judgment of imprisonment, from which defendant brings error.

The first question is of the validity of the search warrant under which the officers entered the premises and there succeeded in procuring the drugs. Defendant is about 58 years of age, and, upon his statement, has been an addict for 30 years. On September 2, 1926, he was, and for several years prior thereto had been, the proprietor of a rooming house called the St. Elmo Hotel, at Stockton, Cal., and also a number of houseboats and a motorboat used in connection with the hotel business. On that day one Moore, a narcotic agent, upon his own affidavit, applied to a United States commissioner for a warrant for the search of the St. Elmo Hotel. The only material part of the affidavit is as follows:

"Affiant, on or about August 25 and 26, 1926, watched the premises occupied and controlled by a narcotic dealer known to affiant as Bom Boy, located in the St. Elmo Hotel, Stockton, Cal., and at the time and place affiant saw known addicts going to and from said hotel, and that affiant overheard one known addict, in conversation with Bom Boy, say that Bom Boy was out of morphine, but had plenty of cocaine. Affiant further alleges and avers that he knows Bom Boy is an extensive dealer in narcotic drugs."

Armed with the warrant thus issued, and with no other process, Moore and two other agents and a state narcotic officer went to the hotel about 12 o'clock at night, and upon defendant's coming in about 30 minutes later they forthwith put him under arrest. After permitting him to read the search warrant, Moore told him that, if he had any narcotics in the house, they would find them anyway, and he would better turn them over, for otherwise they would have to "tear up the house." Whereupon defendant unlocked the door to a storeroom and took from a sweater hanging on the wall therein the larger package, which he said was all he had; but upon a search one of the officers found in the same room the can with 4 grains.

Seasonably defendant applied to the court to have the search warrant quashed, and the drugs thus obtained excluded from evidence, but his petition was denied, to which denial he took exception. Later, during the course of the trial, upon the admission by the agents, while testifying, that the statement in the

24 F.(2d)—33

search warrant affidavit to the effect that the affiant had overheard a conversation between an addict and defendant, was untrue, defendant again moved to quash the warrant and to exclude the evidence obtained by means thereof, but with the same result.

[1] These rulings, we think, were erroneous, for the reason that the facts stated in the affidavit are insufficient to constitute probable cause. The case is readily distinguishable from Steele v. United States, 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757, Forni v. United States (C. C. A.) 3 F.(2d) 354, Fry v. United States (C. C. A.) 9 F.(2d) 38, and Giacolone v. United States (C. C. A.) 13 F.(2d) 108, relied upon by the government. As suggested by the district attorney, the statement in the affidavit touching the conversation of an addict with Baumboy was patently erroneous, and could not properly have had any weight. Moreover, the vital question in issue in the search warrant was whether there was probable cause for believing that at that time, September 2d, narcotics were being unlawfully kept or dispensed in the St. Elmo Hotel. The affiant says only that about a week prior thereto he had seen known addicts going to and from the hotel, but whether he saw two or more he does not state, nor does he state whether he saw addicts go once, or several times. He saw no transaction, even of a suspicious character, and saw nothing brought away, and no change in the appearance or conduct of the addicts. Addicts presumably must lodge somewhere, and that these persons went there for a legitimate purpose is fully as reasonable as a contrary assumption. If by a strain we accept the last sentence above quoted from the affidavit as the statement of a fact, it is wholly inadequate. So, also, the defendant was the known proprietor of a rooming house and was running it as such.

[2] For defendant in error it is urged that the seizure may be justified as an incident of the arrest, but the arrest was, to say the least, no more defensible than the search. And the evidence leaves no doubt that the discovery of the narcotics was procured, and the statements from defendant elicited, under compulsion of the illegal search warrant.

We also think there was prejudicial error in the instructions. While we doubt the propriety of the court's statement to the jury that the defendant admitted his possession of the morphine, there was no specific exception, and his testimony, taken together with the admitted circumstances, so strongly tends to establish the fact, we do not think the error was so plain and substantial as to require

notice upon our own motion. But, following defendant's testimony that he himself was an habitual user of opium, and a reiterated statement by the court to the jury that Congress passed the two narcotic acts "for the purpose of assisting in stamping out in this country what is known as the narcotic evil," the court further said:

"Now he [the defendant] says that he did not sell any of this stuff. Well, it may be that he did not. From his own lips you have learned that he has been an addict for 30 years, and that he uses 30 grains of morphine a day, and, as he says, if he were unable to get his usual dose, he would greatly suffer. I don't remember the exact words he used, but it seems to me that he said that a person addicted to the use of morphine, if he could not get his usual daily dose, might do away with himself. These addicts will bargain and sell their souls for a dose of morphine. I presume that, if the question had been asked of the defendant in this case, he will tell you that is the fact. Now, with these addicts and these users of morphine, it appears that they do assist one another in getting the drug, for the reason mentioned by the defendant in this case, that the great craving that they have for it causes them to fear, if they are not able to get it, that they will do away with themselves. I am told that addicts spread the use of drugs among other people. They say, when a man is a drunkard, addicted to the use of intoxicating liquor, that he doesn't suggest to others that they become addicts like himself; indeed, he may be rather jealous of sharing his bottle with another. But not so with the user of narcotics. So they spread this deadly stuff wherever they are. Of course, we all feel sorry for this man; but we can't let sympathy take the place of right judgment in a case like this."

Whereupon counsel for the defendant interposed: "The defendant objects to the expressions of the court, and to the statement of the court to the jury, on the ground that the same is prejudicial to the interests of the defendant in toto."

[3, 4] We think the instruction was unwarranted, and in all probability prejudicial, and that the exception was ample. True, some of the matters contained in the instruction are more clearly objectionable than others, but, after all, the real ground of objection lies in the weight and purport of the instruction as a whole.

The judgment is reversed, with instructions to grant a new trial.