(No. 20379.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACK McGURN, Plaintiff in Error.

*Opinion filed December 18, 1930.*

Thomas D. Nash, and Michael J. Ahern, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, James A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, and Edward C. Dufficy, of counsel,) for the People.

Mr. Justice Heard delivered the opinion of the court:

Plaintiff in error, Jack McGurn, was indicted, tried and convicted in the criminal court of Cook county of carrying concealed on or about his person a revolver and was sentenced to imprisonment in the county jail for the term of one year and to pay a fine of $300. He brings the record here for review on writ of error, constitutional questions being involved.

Prior to the commencement of the trial plaintiff in error filed a duly verified petition to suppress evidence, reciting that on February 1, 1930, he was riding in a taxicab on the public streets of Chicago, and while so doing Chicago city police officers, without warrant or process of law, and not having any reasonable grounds for believing that he had committed any criminal offense, and without his having

committed a criminal offense in the presence of the police officers, wrongfully arrested him and searched his person, finding thereon a revolver, in violation of the constitutional rights guaranteed him by sections 2, 6 and 10 of article 2 of the constitution of Illinois, and praying that an order be entered suppressing any and all evidence obtained by the police officers as the result of such unlawful arrest and search and seizure. Upon the trial before the jury substantially the same evidence was heard, over plaintiff in error's objection, as was heard on the hearing of the petition to suppress.

There is no dispute as to the facts. On the morning of February 1, 1930, at about 11:30, two Chicago policemen, Drury and Howe, were riding on the front platform of a street car going north at the intersection of Harrison and Dearborn streets, in Chicago. There was a delay in the traffic and they saw plaintiff in error and one Acardo in a west-bound Checker taxi delayed on Harrison street at about the center of the crossing. The policemen jumped off the street car, opened the door of the taxi, Drury climbed in, and, as the policemen expressed it, "piled on top" of Acardo. What took place with reference to plaintiff in error is best told in officer Howe's words: "I opened the door and jumped in on top of McGurn. I put my arms under his, just about taking physical possession of him. As yet I had not found any weapon on him and I had no positive knowledge that he had one. Before I found a weapon on McGurn after making a search I did not see McGurn commit any violation of law. There was no felony which had, in fact, been committed for the commission of which I had reasonable grounds to suspect McGurn. There was no misdemeanor which had, in fact, been committed for the commission of which I had reasonable grounds to suspect McGurn. I had no warrant or process of law for the arrest or search of McGurn. My partner had none. I did not know if there was any warrant or process of law issued by

any court or tribunal in the hands or in the possession of anybody. At the time I opened the cab door and jumped in and seized McGurn and searched him, he was not to my knowledge committing any breach of the peace. He was not doing anything disorderly. He was not making any loud noise or rumpus. He was not creating a riot. I knew McGurn before the morning of February 1, 1930. I had orders from a superior officer to arrest him. The superior officer who told me to arrest McGurn was John Stege, commissioner of detectives. It is a standing order. John Stege did not tell me that he had any warrant or process of law for the arrest of the defendant. He did not tell me anything. I know now that he did not have any process or warrant of law. Stege did not tell me of any felony or misdemeanor that had, in fact, been committed and that he had reasonable grounds to suspect McGurn of having committed it. As I entered the taxicab I hollered to McGurn, 'Keep your hands away from your pockets,' and I piled in on top of him and started to search him. I felt around his sides and around his stomach, and he said to me, 'Don't get excited—don't get excited. You will find it on the right side.' I then got down under his belt and took a gun from under his belt." The officer then took plaintiff in error and Acardo to the detective bureau and locked them up. The only evidence of plaintiff in error having a concealed weapon is that derived from the search of his person in the taxi.

It is contended by plaintiff in error that his arrest, search and the seizure of the revolver were illegal, in violation of his constitutional rights, that the evidence thus obtained was incompetent, and that his petition to suppress the evidence should have been sustained. The guaranty of the constitution is not against all search and seizure but against unreasonable search and seizure and does not extend to an immunity from search and seizure on lawful arrest. Where a crime has, in fact, been committed and an arrest is made by an officer who has reasonable ground for believing the

person arrested is implicated in the crime, such officer has a right to search the person arrested without a search warrant, and in such case the right of search and seizure is incidental to the right of arrest. (*People* v. *Preston,* 341 Ill. 407; *People* v. *Hord,* 329 id. 117.) The next question for our determination, therefore, in the pending case, is whether or not plaintiff in error's arrest by Howe was a legal arrest.

Under the common law constables and watchmen were authorized to arrest felons, and persons reasonably suspected of being felons, without a warrant, and as conservators of the peace they also had authority to make arrests without warrants in cases of misdemeanors which involved breaches of the peace committed in the presence of the officers making the arrests and which could not be stopped or redressed except by immediate arrest. (2 R. C. L. 446; *North* v. *People,* 139 Ill. 81; *Kindred* v. *Stitt,* 51 id. 401.) Policemen were unknown to the common law, but they are generally considered as having the same powers as watchmen and constables. (*Shanley* v. *Wells,* 71 Ill. 78.) By paragraph 657 of the Criminal Code, (Smith's Stat. 1929, p. 1056,) in this State an arrest may be made by an officer or by a private person without warrant for a criminal offense committed or attempted in his presence, and by an officer when a criminal offense has, in fact, been committed and he has reasonable ground for believing that the person to be arrested has committed it. It is the rule in this State where a criminal offense has, in fact, been committed, that an officer has a right to arrest without a warrant where he has reasonable ground for believing that the person to be arrested is implicated in the crime. (*People* v. *Swift,* 319 Ill. 359.) To justify the officer in making the arrest without a warrant his ground for belief that the person to be arrested is guilty of a crime must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*Kindred* v. *Stitt, supra.*) False im-

prisonment is an unlawful violation of the personal liberty of another and consists of confinement or detention without legal authority. (Smith's Stat. 1929, Crim. Code, par. 252.) In order to constitute false imprisonment it is not necessary to show that the person guilty thereof used physical violence or laid hands on the person falsely imprisoned or confined him in a jail or prison, but it will be sufficient that if at any place or time he in any manner restrained such person of his liberty or detained him in any manner from going where he wished or prevented him from doing what he desired. (*Hawk* v. *Ridgway*, 33 Ill. 473; *People* v. *Scalisi*, 324 id. 131.) In *Board of Trustees* v. *Schroeder*, 58 Ill. 353, it is said: "When officers assume the power to imprison without authority of law or without any of the forms or processes usual and necessary to be employed they become liable for false imprisonment. The liberty of the citizen cannot be so far trifled with that any constable in the land may of his own volition commit and hold him in custody until it suits his convenience or pleasure to release him." In *People* v. *Scalisi, supra,* where the right of the police of Chicago to arrest for questioning was sought to be upheld, this court said: "When the police squad sought to infringe upon the liberty of plaintiffs in error and arrest and detain them for questioning they had no reasonable ground to suspect that either plaintiff in error had been guilty of any crime, and plaintiffs in error were not nightwalkers or vagrants, and hence the attempt to arrest and detain them was unlawful."

In the pending case, according to the testimony of Howe, when he arrested plaintiff in error there was no felony which had, in fact, been committed for the commission of which Howe had reasonable grounds to suspect plaintiff in error. There was no misdemeanor which had, in fact, been committed for the commission of which the officer had reasonable grounds to suspect plaintiff in error. There was nothing about the attending circumstances which would lead

a reasonable and prudent man to believe that plaintiff in error was, in fact, committing any crime or which would justify the officer in making the arrest. At the time of the arrest plaintiff in error was restrained of his liberty, and detained from going where he wished, without any warrant or sufficient legal authority, and his arrest was, therefore, under the laws of this State unlawful. His arrest being unlawful, it follows as a natural sequence that the search of his person by the officer without a search warrant was an unreasonable one and the seizure of the revolver found upon his person was an unlawful seizure. The only attempt to justify this illegal arrest is the statement of Howe that he was acting under orders of his superior officer, John Stege, commissioner of detectives, to arrest plaintiff in error. Stege did not have any warrant or process of law for plaintiff in error's arrest. Just what the duties of a commissioner of detectives are we are not informed by the evidence. The office is not one named in our statutes, and under the constitution of this State no municipality has authority to clothe any officer with the autocratic power to order the summary arrest and incarceration of any citizen without warrant or process of law and thus render the liberty of every one of its citizenry subject to the arbitrary whim of such officer. An officer has no more right to disregard and violate the constitution than the criminal has to violate the law. A criminal may have forfeited his right to liberty, but he cannot legally be deprived of it except in accordance with the law of the land. It is the duty of officers to support and maintain the constitution. If officers who have taken an oath to support the constitution openly violate it, how can they expect to retain the confidence and respect of the people for the administration of law? *People* v. *Snow,* 340 Ill. 464.

In *Youman* v. *Commonwealth,* 189 Ky. 152, 224 S. W. 860, the court, in construing the search and seizure provisions of the Kentucky constitution, which are similar to

our own, said with reference thereto: "And this broad protection against unlawful search and seizure applies with equal force to the person, and, subject to the exception that an arresting officer has the right to search the person of a prisoner lawfully arrested and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested that may be used as evidence against him, or any weapon or thing that might enable the prisoner to escape or do some act of violence, it is as great a violation of the constitution for an officer to search a person, or baggage carried about by him, without a warrant authorizing it, as it is to search his premises. * * * But no search of the person or personal baggage or personal belongings, or seizure of any articles found thereon or therein, can be made on suspicion or without a search warrant unless and until the offender is first taken into custody under a warrant of arrest or his arrest without a warrant is authorized by section 36 of the Criminal Code, providing that an officer may make an arrest without a warrant * * * 'when a public offense is committed in his presence or when he has reasonable grounds for believing that the person arrested has committed a felony.' * * * It is not an uncommon thing in this State for officers of the law, urged in some cases by popular clamor, in others by the advice of persons in a position to exert influence, and in yet others by an exaggerated notion of their power and the pride of exploiting it, to disregard the law upon the assumption that the end sought to be accomplished will justify the means, and therefore no attention need be given to constitutional authority when public approval will commend the unlawful conduct. And as there appears to be a growing public sentiment against the observance of or obedience to any constitutional restraint that obstructs or stands in the way of the desires of those who seek to accomplish their purposes regardless of constitution or laws, we will be at some pains to set down in this

opinion the constitutional provisions protecting the citizen against unlawful search and seizure and a few of the principal authorities in which the force and effect of these provisions have been explained and expounded." The court after a citation of many authorities concludes: "It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital fundamental principle of the law in order to secure his conviction. In the exercise of their great powers courts have no higher duty to perform than those involving the protection of the citizen in the civil rights guaranteed to him by the constitution, and if at any time the protection of these rights should delay, or even defeat, the ends of justice in the particular case, it is better for the public good that this should happen than that a great constitutional mandate should be nullified. It is trifling with the importance of the question to say, as some courts have said, that the injured party has his cause of action against the officer and this should be sufficient satisfaction. Perhaps, so far as the rights of the individual are concerned, this might answer, but it does not meet the demands of the law-abiding public, who are more interested in the preservation of fundamental principles than they are in the punishment of some petty offender."

In *State* v. *Wills*, 91 W. Va. 659, 114 S. E. 261, the court, in considering an arrest and search without a warrant, said: "The defendant was arrested without a warrant. When arrested, so far as the officer could observe, defendant was violating no law. He was, in fact, violating the law, but the officer did not know it. Why he arrested him does not appear. The record on that point is silent. It does show that at the time of his arrest the liquor could not be seen. * * * He was doubtless arrested on mere suspicion of having 'moonshine liquor' in his possession. If so, that suspicion turned out to be well founded. But the officer does not say that he even had such suspicion. After

his arrest the officer searched his person and found two bottles of liquor on him containing about a pint and a half. The officer had no warrant either for his arrest or search. It may be admitted that had he been lawfully arrested for the offense then his subsequent search would have been lawful. But his arrest was unlawful, as, within the meaning of *State* v. *Lutz,* 85 W. Va. 330, there was no such offense being committed by defendant in the officer's presence as authorized the officer to arrest without a warrant. His arrest being unlawful it necessarily follows that the subsequent search of his person was unlawful and the evidence of his offense was unlawfully and illegally obtained. * * * It is not a case of lawful arrest followed by search, where the accused claims the search unlawful, but one where both arrest and search were alike unlawful."

In *Hughes* v. *State,* 2 Ga. App. 29, 58 S. E. 390, the court considered the question of arrest and search in a case very similar to the pending one. The only witness for the State (a police officer) testified to overtaking the defendant and another walking leisurely along a public street, searching defendant and finding on his person a pistol in his right hip pocket, under his coat. The defendant was then taken to a police station, where a charge of carrying concealed weapons was entered against him and a conviction ensued. In its opinion reversing the judgment of conviction the Supreme Court of Georgia said: "In the present case an orderly citizen, on a peaceable mission, so far as the evidence discloses, while walking the public thoroughfare is assaulted, seized, searched and deprived of his property, either upon bare suspicion or from mere curiosity. While one of the officers holds him another searches his person and discovers a concealed pistol. The defendant was violating one law. To get proof of this the witness was compelled to violate two. With the utmost abhorrence and detestation of the practice of carrying deadly weapons concealed, we cannot give our sanction to a prosecution for

crime which involves a commission of more crimes. Unless two wrongs make a right, prosecutions and convictions on evidence which can only be obtained by graver violations of the law cannot be countenanced by any consideration of sound public policy. Surely, unless the law recognizes favorites among crimes and gloats with fond partiality in the prosecution of one offense more than another, it ought not to be necessary to abuse the liberty of the citizen and compel him, directly or indirectly, not only by fear but by superior force, to furnish evidence against himself. Under our constitution no witness is compelled to testify against himself or even to incriminate himself, and all evidence obtained by force or fear is justly outlawed. As well said by Justice Lumpkin, rendering the opinion in *Pickett* v. *State,* 99 Ga. 15, 25 S. E. 609, 59 Am. St. Rep. 226: 'While * * * an officer may without a warrant make an arrest for an offense committed in his presence, he has no authority, upon bare suspicion or upon mere information derived from others, to arrest a citizen and search his person in order to ascertain whether or not he was carrying a concealed weapon in violation of law. The constitution of this State expressly declares in the bill of rights that 'the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated.' * * * If any search is unreasonable and obnoxious to our fundamental law it is one of the kind with which we are now dealing. Even if the person arrested did, in fact, have a pistol concealed about his person, the fact not being discoverable without a search, the offense of thus carrying it was not, in legal contemplation, committed in the presence of the officer, and the latter violated a sacred constitutional right of the citizen in assuming to exercise a pretended authority to search his person in order to expose his suspected criminality.' "

In *Town of Blacksburg* v. *Beam,* 104 S. C. 146, the court said: "Some things are to be more deplored than

the unlawful transportation of whisky. One is the loss of liberty. Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person, and he who accomplishes it must do so in conformity to the laws of the land. There are two reasons for this—one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandate. In the instant case the possession of the liquor was the body of the offense. That fact was proved by a forcible and unlawful search of the defendant's person to secure the veritable key to the offense. It is fundamental that a citizen may not be arrested and have his person searched by force and without process in order to secure testimony against him. It is better that the guilty shall escape rather than another offense shall be committed in the proof of guilt."

In *Allen* v. *State*, 183 Wis. 323, 197 N. W. 808, in a case somewhat analagous to the pending one, the court said: "Had the officers made a legal arrest they would have been justified in their search of the defendant, or had the officers made a legal search of the defendant they would have been justified in making an arrest upon finding defendant violating the law. But the officers did neither. They had no warrant to arrest. They had no warrant to search. So, assuming that the arrest was made before the search, the arrest was illegal and the search following was illegal; or, assuming the search was made before the arrest, the search was illegal and the arrest based thereon without a warrant was illegal. * * *. The defendant was peacefully going his way. He was officiously restrained—illegally restrained. He was searched—illegally searched. The test is not that the officers found liquor upon the defendant. Suppose they had not found it? They would have been guilty, under the law, of illegal search—of violation of the defendant's sacred right, under the constitution, to walk the street unmolested.

That the officers found liquor could not change the original wrong into a right. That wrong was not blotted out by what they found. The test is the right of an innocent pedestrian against unlawful invasion of his person, and the innocent cannot be protected if officers are permitted to search the person of everyone who has been accused by hearsay or rumor. If these officers might waylay a pedestrian without warrant and search his person, opportunity would be open wide for the night prowler and robber to hold up their victims under pretense of official authority, search their persons and take their valuables without resistance. The answer is that it cannot be done."

In *Matter of Sarah Way*, 41 Mich. 299, 1 N. W. 1021, the court said: "Making, as we are disposed to make, all proper allowance for zeal of police officers in dealing with persons who are supposed to be bad members of society, it is the duty of all courts to prevent good or bad citizens from being unlawfully molested. Official illegality is quite as reprehensible as private violations of law. The law of the land must be accepted by everyone as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert."

In *State* v. *Massie*, 95 W. Va. 233, 120 S. E. 514, while the defendant was in a pool-room, in which he had no interest, he was searched under authority of a supposed warrant and a pistol found concealed upon his person. Upon review of the record of his conviction, in reversing the same the Supreme Court said: "If the search was unauthorized the evidence of the offense charged against the defendant was not admissible against him on the trial. * * * Whether we consider the arrest as made before the search or after the finding of the pistol, the result is the same. The officer had no information that defendant had a pistol."

In *Hughes* v. *State*, 145 Tenn. 544, it was said: "The State, having through its executive representatives produced

the evidence of a violation of the law by one of its citizens by means prohibited by the constitution, cannot be permitted through its judicial tribunal to utilize the wrong thus committed against the citizen to punish the citizen for his wrong, for it was only by violating his constitutionally protected rights that his wrong has been discovered. It is no answer to say that it matters not how a citizen's sins have been found out. Security from unlawful search is the right guaranteed to the citizen, even for the discovery of the citizen's sins. This right we must protect unless we may with impunity disregard our oath to support and enforce the constitution. The experience of our forefathers with unlawful searches and seizures was deemed by the people who framed the constitution sufficient to warrant the provision by which, in instances, even the guilty might escape detection and punishment."

In *People* v. *Castree,* 311 Ill. 392, this court, in holding that where the defendant makes timely application before the beginning of the trial for the return of property alleged to have been unlawfully seized by officers of the State without a proper search warrant the court should hear and determine the legality of the seizure, and if it is found to have been in violation of the defendant's constitutional rights the evidence so obtained should not be admitted, said: "Our State constitution guarantees to every person charged with crime—and it makes no distinction between the guilty and the innocent—the right to a trial by a jury of twelve men, to be confronted by the witnesses against him, face to face, not to be compelled to give evidence against himself, and to be secure in his person, house, papers and effects against unreasonable search and seizure. The framers of the Federal constitution as originally presented did not include in it these provisions, but they were added on the demand of the States to which it was submitted for adoption. They were then deemed necessary for the protection of the individual against the oppressive action of

the government—not only of the indefinite aggregation of authority which has its seat at the capital but of every official who administers a part of the functions of government. They were adopted not to enable the guilty to escape the consequences of their crime nor only to be availed of by the innocent, but they were regarded as essential to the protection of every person against whom a charge of crime was made, from the arbitrary, tyrannical and unlawful conduct of the representatives of the government. A consideration of the origin, history and use of writs of assistance in England, of their use in this country, and the evolution of the fourth amendment to the Federal constitution, manifests the importance of this safeguard of the citizen against unreasonable searches and seizures of his person or property, and the necessity that it shall not be frittered away by the courts by a narrow and illiberal construction and a willing blindness and indifference to its violation." The rule thus laid down has been followed in many other cases in this State, among them *People* v. *Montgares,* 336 Ill. 458, *People* v. *Fetsko,* 332 id. 110, *People* v. *Elias,* 316 id. 376, *People* v. *Reid,* 315 id. 597, and *People* v. *Prall,* 314 id. 518.

The arrest of plaintiff in error being illegal and the search of his person and the seizure of the revolver being in violation of his constitutional rights, it follows as a natural corollary that the court should have granted plaintiff in error's petition and suppressed the evidence unlawfully obtained and that the court erred in admitting in evidence the revolver obtained as the result of the search and seizure.

It is contended by defendant in error that the search and seizure were not in violation of plaintiff in error's constitutional rights because of his alleged consent thereto. While plaintiff in error informed the person searching him, whom he recognized as a police officer, where the revolver might be found, this information was given after the officer had made a violent assault upon him—had, in the offi-

cer's language, "just about taken physical possession of him" and was searching around his side and stomach. Plaintiff in error's language on that occasion cannot be taken as a waiver of his constitutional rights, but rather as a submission to the officer's supposed authority for the purpose of the prevention of further violence.

It is argued by defendant in error that even though the arrest, search and seizure were illegal and the evidence thereby obtained not competent, yet the defendant should be convicted because he was, in fact, guilty of the crime of carrying a concealed weapon. In *Hoyer* v. *State,* 180 Wis. 407, 193 N. W. 89, the court said: "Section 11, art. 1, Wis. const. *supra,* is a pledge of the faith of the State government that the people of the State, all alike, (with no express or possible mental reservation that it is for the good and innocent only,) shall be secure in their persons, houses, papers and effects against unreasonable search and seizure. This security has vanished, and the pledge is violated by the State that guarantees it, when officers of State, acting under color of State-given authority, search and seize unlawfully. The pledge of this provision and of section 8 are each violated when use is made of such evidence in one of its own courts by other of its officers. That a proper result—that is, a conviction of one really guilty of an offense—may be thus reached is neither an excuse for nor a condonation of the use by the State of that which is so the result of its own violation of its own fundamental charter. Such a cynical indifference to the State's obligations should not be judicial policy. Such constitutional provisions here invoked are not grants of rights of action for trespass against official or individual violators of such guaranteed rights, for other provisions of the constitution give such remedies. To say, then, that when the State itself has thus violated its own pledges it may use the results thereby obtained for its own purpose, become a party to the trespass by ratification, trace its title

through wrongful acts of its officers, remain itself immune, in its sovereignty, from legal liability, and then relegate the individual whose rights are thus swept away and made valueless in and by a court of justice to his bootless and fruitless action of trespass against such trespassing State officials as individuals, is to gibe and to jeer."

In *Silverthorne Lumber Co.* v. *United States,* 64 U. S. (L. ed.) 319, the Supreme Court of the United States upon this question said: "The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had. The proposition could not be presented more nakedly. It is, that although, of course, its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the constitution covers the physical possession but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. *Weeks* v. *United States,* 232 U. S. 383, 58 L. ed. 652, L. R. A. 1915-B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915-C, 117, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the fourth amendment to a form of words. (232 U. S. 393.) The essence of a provision forbidding the acquisition of evidence in a certain way is, that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."

While the police officers testified that at the time of plaintiff in error's arrest, search and seizure of the revolver he had the revolver concealed upon his person, the only knowledge which they had upon the subject was that derived as the result of their unlawful search and seizure. This evidence was therefore incompetent.

There being no competent evidence in the record showing or tending to show plaintiff in error's guilt of the crime with which he was charged in the indictment, the judgment of the criminal court is reversed and the cause remanded.

*Reversed and remanded.*