**The People of the State of Illinois, Defendant in Error, v. John Davies, Plaintiff in Error.**

**Gen. No. 36,421.**

Opinion filed February 6, 1933. Rehearing denied February 20, 1933.

SAMUEL E. BARTH and ELWYN E. LONG, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, J. J. NEIGER, Assistant Attorney General, and JOHN A. SWANSON, State's Attorney, for defendant in error; EDWARD E. WILSON and GRENVILLE BEARDSLEY, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Defendant was found guilty of removing marks of identification on an automatic pistol, contrary to the statute, chapter 38, Criminal Code, paragraph 141 (2½) (Cahill) 1931, which says that, "Possession of any firearm upon which any such mark shall have been changed, altered, removed, or obliterated, shall be *prima facie* evidence that the possessor has changed,

altered, removed or obliterated the same." The case was tried by the court, who fixed the punishment of the defendant at one year in the House of Correction and a $100 fine. Defendant took the case by writ of error directly to the Supreme Court, which has transferred the case to this court.

A large part of defendant's brief is devoted to the argument that the section of the statute which defendant was charged with violating is unconstitutional. This question was not raised upon the trial. Furthermore, as the Supreme Court has transferred the case to us, we are precluded from considering the constitutional question.

Defendant presented a petition to suppress the evidence, which was denied by the trial court. Defendant argues that this ruling was erroneous. A Chicago police sergeant, Michael P. Naughton, with another police officer called at defendant's home at about 10 o'clock on the morning of January 16, 1932, for the purpose of talking with him about another case in which defendant was involved; the officers went to the rear door of the second floor and Naughton rang the bell; defendant's wife came to the door and Naughton talked with her. While the officers were standing on the rear porch they noticed through the window that defendant had an automatic pistol in his hand; he pointed it at the officers and ordered them to get off the porch; they said they were police officers, but the defendant replied, "I don't give a damn who you are, you bastards, get down off the porch." Naughton then ordered defendant to open the door but he refused and he "cocked the trigger" and kept threatening the officers with the pistol, saying he would shoot them if they did not get off the porch; Naughton then took his police star in his hand and walked up to the window and held it against the window and again ordered defendant to open the door, which was refused;

Naughton then said that he would return with a squad and take the defendant into custody, and within 10 minutes came back with two other police officers; Naughton rapped at the door and was admitted. Defendant was found in the kitchen without the pistol; Naughton asked him as to where the pistol was and defendant replied, ''I will give you $25, forget about the pistol''; defendant then told his wife to get the gun; defendant's sister had the gun in her bedroom and she handed it to Naughton; Naughton asked the defendant if this was the gun he had pointed at Naughton and defendant answered, ''Yes.'' The gun was loaded, the trigger and hammer were back ready to fire; it was a Colt 45-calibre automatic pistol; the manufacturer's name and serial number had been erased.

Defendant testified that about six months before, while driving in a car, he saw a fellow whom he knew by name of Stork; defendant stopped his car and Stork asked him if he wanted to buy a pistol; defendant said he did and bought it for $15. Naughton testified that he did not threaten to put defendant under arrest until after he had threatened to shoot the officers with the pistol. The officers said they had no search warrant for the defendant, nor warrant for his arrest; that they were not calling upon him with the expectation of arresting him. Defendant testified that his wife and sister had been held up about two years before and that when he saw Naughton and his partner on the back porch he did not know who they were; that when he showed them the gun they both ''flashed'' stars and told him that they wanted to talk with him; defendant said that he had never made any changes or alterations on the gun since he had purchased it; he had been unemployed for about a year and a half before this time.

Defendant's counsel argue that there was an unlawful entry into the home of the defendant and an unlawful search and seizure of the pistol, citing *People v. Scalisi*, 324 Ill. 131, and *People v. McGurn*, 341 Ill. 632. Both of these cases restate the well established rule that police officers have authority to make arrests without warrants in cases of misdemeanors involving breaches of the peace committed in the presence of the officers. When defendant pointed the loaded pistol at the officers, threatening to shoot them, and, as one witness says, "cocked the trigger," defendant committed an assault with a deadly weapon, in violation of paragraph 37, chapter 38, Illinois Statutes (Cahill). The officers were thereupon justified in entering the premises and searching the defendant without a search warrant. *People v. Kissane*, 347 Ill. 385; *People v. Caruso*, 339 Ill. 258. Paragraph 681, chapter 38, Illinois Statutes (Cahill). Having seen the defendant commit the crime, the officers had the right to take possession of the pistol with which defendant had threatened them.

Defendant does not argue that he was not properly found guilty upon the evidence presented.

For the reasons indicated the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.