(No. 21579.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GENERO ROBERTA, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 7, 1933.*

DUNN and DUNCAN, JJ., dissenting.

MICHAEL COSTABILE, (MARTIN M. WARD, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff in error, Genero Roberta, was indicted in the criminal court of Cook county for carrying on or about his person a concealed weapon. A jury was waived, and Roberta and George Montascato, who was arrested at the same time and place and indicted for a like offense, were tried jointly. The court found both defendants guilty, ordered an investigation for probation made on behalf of Montascato, and judgment was entered against Roberta, sentencing him to imprisonment in the House of Correction for one year and to pay a fine of $300 and costs. This judgment was affirmed by the Appellate Court for the First District, and Roberta has prosecuted a writ of error to this court to reverse the judgment.

Before plaintiff in error's plea of not guilty was entered he filed a motion to suppress the evidence and quash the indictment. That motion was supported by a written petition setting forth that the police officers had no warrant for the arrest of plaintiff in error; that he had committed no criminal offense in the presence of the officers; that the evidence obtained by such officers was secured in violation of his constitutional rights; that he was unlawfully searched and that the revolver was unlawfully seized. The petition prayed that the court grant a hearing thereon before proceeding to trial. With the assent of counsel for plaintiff in error the cause was tried before the court with the assurance from the court that if any of the State's evidence was incompetent it would be excluded. The only evidence produced on behalf of the prosecution was the testimony of two police officers, and the introduction, after identification, of the two pistols taken from Roberta and

Montascato. This proof was objected to by counsel for plaintiff in error, but the objections made were overruled by the court and the motion to suppress the evidence was denied.

The State's evidence shows that four or more police officers of the city of Chicago who were assigned for duty to the State's attorney's office of Cook county, entered the second floor of a two-story building in Chicago Heights about 10:30 o'clock on the night of September 30, 1930, and arrested two girls who the officers said admitted to them that they were living there and were practicing prostitution. The officers also arrested the man who was pointed out by the girls as the owner of and in charge of the hotel and then inquired of the girls if anyone else was connected with the place. The girls replied there were a couple of sluggers, who were their men, in the store room on the ground floor of the same building. The officers went down-stairs to this room, which was fitted up as and supposed to be a gymnasium but was apparently operated in connection with the house of ill-fame. Upon entering the store room the officers saw three men sitting at a table and asked them to stand up. The men remained seated, and were told by the police, "We are police officers; stand up." The men did not stand up as requested, and officers Sherping and Levine seized them and then searched each of them. Pistols were found on plaintiff in error and Montascato and they were taken into custody by the police. The officers then searched the entire building, examined the safe, and found men's wearing apparel in one of the up-stairs bed-rooms. The policemen had no warrant for the arrest of any person residing or being in the building and had no search warrant authorizing the search of the building or any person in it. There is no evidence that there was any loud noise, disorder, breach of the peace or unusual cause for the officers entering the building and making the arrests and search, though one of the officers

testified that when they started out from Chicago he had information that the place was a house of prostitution and the other officer stated that they were out raiding the place. Officer Levine also stated that he was positive there was prostitution practiced there, and that the officers had reasonable ground to believe Roberta and Montascato, who the girls said were their men, had some connection with the conduct and operation of the place.

Plaintiff in error testified, in substance, that he lived alone and paid room rent for room No. 8 at the hotel, the same as he did on the night of September 30, 1930; that at that time he had suits, shirts, underwear, shoes and socks in his room, some of which were missing after the police searched the room; that he did not know any of the girls in the building and that he was not a slugger; that he had previously worked at the Indiana Steel Mills; that on the night he was arrested he had gone down to the gymnasium, where it was his custom to take a shower bath, and was sitting there talking when the officers came in. He stated he did not carry a gun outside, and inferred that he had a gun on his person while in the gymnasium because a fellow was shot there not long before. He also said that he did not do anything the evening the officers were there and had never been arrested before.

Montascato testified that he lived on Fifth avenue, in Chicago Heights, and had worked at a butcher shop on Twenty-second street for about five years; that he was arrested in the gymnasium around 10:00 o'clock at night on September 30, 1930; that he went there three or four times a week to take a shower bath; that when he was arrested he was doing nothing out of the way and had been sitting down in the room; that he did not have a room at the hotel, had no girl there and had never been a slugger. He stated he had worked from 7:00 to 7:00 o'clock, lived around a lot of colored people, heard of several hold-ups, and for that reason had carried a gun.

It is contended by plaintiff in error that his arrest was illegal, the search of his person and the seizure of the revolver were in violation of his constitutional rights, and the evidence having been unlawfully obtained his petition to suppress the evidence should have been sustained. In support of that contention counsel for plaintiff in error assert that the police officers had no right to enter the premises and conduct a search without a search warrant, and their conduct after entering the building was a gross violation of the legal rights of any person with whom they interfered or whom they molested and who was rightfully in the building.

By paragraph 657 of the Criminal Code, (Smith's Stat. 1929, p. 1056,) in this State an arrest may be made by an officer or by a private person without a warrant for a criminal offense committed or attempted in his presence, and by an officer when a criminal offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it. The term "criminal offense," used in the statute, has been construed to include misdemeanors as well as felonies. (*People* v. *Scalisi,* 324 Ill. 131.) Where a criminal offense has, in fact, been committed, an officer has a right to arrest without a warrant where he has reasonable ground for believing that the person to be arrested is implicated in the crime, and such officer has a right to search the arrested person without a search warrant. (*People* v. *Caruso,* 339 Ill. 258; *People* v. *Kissane,* 347 id. 385.) The right of such search and seizure is incidental to the right of arrest. (*People* v. *McGurn,* 341 Ill. 632.) Whether or not in a given case there are reasonable grounds to warrant an arrest is a mixed question of law and fact. No general rule applicable to every case has been or probably can be announced as to what facts will constitute justification, in law, for an arrest by an officer without a warrant, other than that such ground of suspicion or belief exists as should

influence the conduct of a prudent and cautious man under the circumstances. Each case must be considered upon its own facts. *People* v. *Kissane, supra; People* v. *Scalisi, supra.*

Paragraphs 162 and 163 of the Criminal Code (Smith's Stat. 1929, p. 987,) provide for the punishment of any person having any connection with a house of prostitution or ill-fame, whether in the capacity of owner, keeper, patron or inmate. When the officers, one of whom said he had previous information that the place was a house of prostitution, entered the second floor of the building, where the girls were, the latter admitted that they were carrying on prostitution there, and told the officers that Roberta and Montascato were their men and were sluggers for the place and were down-stairs in the gymnasium store room, where the officers later arrested them. Before their arrest no information was obtained from the two men, or through any property belonging to them, that they had any interest in or connection with the place. However, from the information which the police received from the girl inmates it was reasonable for the officers to believe that the place was being conducted as a house of prostitution and that these men had some connection therewith, which was a violation of the law. Under such circumstances we think the seizing of the men by the officers, which we take it was then considered by them as an arrest, and their being taken into custody, were justified. The search of the arrested parties without a search warrant was incidental to the lawful arrest, and the taking of the guns, and the introduction thereof on the trial as evidence against the men on the charge of carrying concealed weapons, was proper. Plaintiff in error's motion to suppress evidence was properly denied.

There being no reversible error in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

DUNN and DUNCAN, JJ., dissenting.