(No. 22216.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JERRY FORD, Plaintiff in Error.

*Opinion filed June 15, 1934.*

WM. SCOTT STEWART, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Per CURIAM : Jerry Ford was indicted in the criminal court of Cook county for carrying a concealed weapon. He pleaded not guilty and waived a trial by jury. The court found him guilty and, after the denial of motions for a new trial and in arrest of judgment, sentenced him to three months' imprisonment in the house of correction of the city of Chicago and fined him $300 and costs. Charging the violation of his constitutional rights, Ford prosecutes this writ of error.

Prior to the commencement of the trial, the plaintiff in error made a motion to suppress the evidence relating to a revolver taken from him by police officers. In support of the motion, Joe Cantello, a deputy sheriff and a sergeant of the county highway police, was called as a witness. Cantello testified that on July 12, 1933, he and two other officers, while in the performance of their duties, saw the plaintiff in error in his automobile at the intersection of Dempster street and Ferris avenue in Morton Grove, Cook county; that he did not see the latter engaging in the commission of any offense; that he arrested him without a warrant and that after making the arrest, he searched him and discovered an automatic pistol. Upon cross-examination Cantello testified that the plaintiff in error was reputed

to be a member of a group of persons, eight of whom he named, known as the Touhy gang and that, acting under instructions from a superior officer to apprehend any members of the gang for questioning with respect to the abduction of one Jake Factor, he had endeavored to find the plaintiff in error. He further testified that some of the persons associated with the Touhy gang were reputed to have been engaged, among other things, in robberies and kidnapings, and that, since the arrest of the plaintiff in error, the leader of this gang had been arrested in Minnesota charged with the kidnaping of a resident of that State. The officer stated, however, that he had no reason to suspect the plaintiff in error of participation in any robbery or kidnaping. The motion to suppress was denied.

Upon the trial, the prosecution called Cantello as its witness. To the testimony given on the preliminary motion, he added that on July 12, 1933, at about 5:00 o'clock in the afternoon, he and two other officers were riding in an automobile on Dempster street; that as they approached the intersection of this street with Ferris avenue, he saw the plaintiff in error sitting in an automobile parked in front of a roadhouse; that they proceeded east on Dempster street for a short distance, turned their automobile around and returned to the car in which the plaintiff in error was seated; that he immediately placed the plaintiff in error under arrest without apprising him of any charge for his apprehension, and that he then searched the plaintiff in error and found a revolver concealed in the latter's left hip pocket. The officer took the weapon and ascertained that it was loaded with eight shells. The revolver was admitted in evidence. Cantello was the only witness to testify at the hearing on the motion to suppress and at the trial. Upon the conclusion of his testimony, the plaintiff in error renewed his motion to exclude the prosecution's evidence on the ground that his constitutional rights had been violated. The motion was again denied.

The plaintiff in error contends that his arrest, the search of his person and the seizure of his revolver were in contravention of his constitutional rights; that the evidence so obtained was incompetent, and that his motion to suppress the evidence should have been granted.

Section 6 of article 2 of the constitution provides that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." This guaranty does not extend to all but only to unreasonable searches and seizures, and affords no immunity from search and seizure upon a lawful arrest. (*People* v. *McGurn,* 341 Ill. 632). Section 4, division 6 of the Criminal Code (Cahill's Stat. 1933, p. 1078; Smith's Stat. 1933, p. 1094), provides: "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it." The term "criminal offense" includes misdemeanors as well as felonies. (*People* v. *Roberta,* 352 Ill. 189; *People* v. *Scalisi,* 324 id. 131). Where a criminal offense has, in fact, been committed, an officer has the right to arrest without a warrant provided he has reasonable ground for believing that the person to be arrested is implicated in the offense. (*People* v. *Humphreys,* 353 Ill. 340; *People* v. *Roberta, supra; People* v. *McGurn, supra; People* v. *Swift,* 319 Ill. 359). To justify an arrest by an officer without a warrant his ground for belief that the person arrested is guilty of an offense must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*People* v. *Humphreys, supra; People* v. *Macklin,* 353 Ill. 64; *People* v. *McGurn, supra; People*

v. *Doody,* 343 Ill. 194; *Kindred* v. *Stitt,* 51 id. 401). If the right of arrest exists, the right of search and seizure is incidental thereto. *People* v. *Humphreys, supra; People* v. *Macklin, supra; People* v. *McGurn, supra; People* v. *Preston,* 341 Ill. 407; *People* v. *Hord,* 329 id. 117.

It is manifest from the evidence that the plaintiff in error was committing the offense of carrying a concealed weapon at the time officer Cantello arrested him. The officer, however, had neither knowledge nor information that the plaintiff in error had committed any criminal offense. The evidence discloses that he was arrested solely because he was reputed to be a member of a certain body of men suspected of being implicated in the kidnaping of Factor. It is not charged that Cantello entertained the belief that the plaintiff in error was implicated in that offense. Although the officer stated that the Touhy gang was reputed to have engaged in robberies and kidnapings, he testified that he did not suspect the plaintiff in error of participation in any of those offenses. No overt act of a criminal tendency had been committed and nothing the plaintiff in error did caused the officer to suspect him of the specific offense of carrying a concealed weapon. The discovery of the weapon after the arrest cannot relate back to, and operate as a justification for, the arrest. (*People* v. *Macklin,* 353 Ill. 64). When the liberty of the plaintiff in error was invaded by his arrest, officer Cantello had no reasonable ground to suspect that he had committed or was committing any criminal offense, and the arrest without a warrant or sufficient legal authority was therefore unlawful. It necessarily follows that the subsequent search of the person of the plaintiff in error was illegal and that the knowledge and the evidence of the misdemeanor were obtained and used against him in violation of section 6 of article 2 of the constitution. The provision of the bill of rights that a citizen shall be secure in his person, house, papers and effects against unreasonable searches and seizures is in-

tended for the protection of the individual against oppressive action by the government and every officer who administers a part of the functions of government. (*People* v. *Macklin, supra; People* v. *McGurn, supra; People* v. *Castree,* 311 Ill. 392; *People* v. *Brocamp,* 307 id. 448). The evidence which the plaintiff in error by his motion sought to suppress was incompetent and the motion should have been granted. Without this evidence there is no competent proof tending to show that the plaintiff in error was guilty of the offense charged against him.

The judgment of the criminal court is reversed.

*Judgment reversed.*