[Crim. No. 5763. In Bank. Feb. 24, 1956.]

THE PEOPLE, Appellant, v. JAMES W. SANDERS, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan and Lewis Watnick, Deputy District Attorneys, for Appellant.

G. Vernon Brumbaugh for Respondent.

A. L. Wirin and Fred Okrand as amici curiae on behalf of Respondent.

TRAYNOR, J.—By information defendant was charged with keeping and occupying a business building for the purpose of horse-race bookmaking in violation of Penal Code, section 337a, subdivision 2. Defendant was arrested at his place of business, and evidence taken by the officers from defendant's person and the premises was introduced at the preliminary hearing. It consisted of keys to the premises that were in defendant's possession, betting markers, owe sheets, and scratch sheets. One of the officers testified that at the time of the arrest he answered the telephone, and a female voice said, "This is Maude. Give me your answer on Devil's Sound in the 2d race at Hialeah." Five or six other callers asked for Jimmy, and when the officer told them that Jimmy had stepped out, they hung up. The officers were not questioned at the preliminary hearing with respect to facts bearing on the legality of their search or the lawfulness of the arrest. When, however, defendant moved to set the information aside on the ground that the evidence was illegally obtained, the parties stipulated to the following additional facts: The officers went to defendant's place of business, a phonograph record shop, in the morning in search of another man they had arrested the day before at the record shop for bookmaking. They entered the front door of the shop, which was open to the public and used to display records. No one was in the front room, and the officers went to a door that separated it from a second room behind, which was not open to the public. There was a large hole

cut in this door, and the officers looked through the hole and saw defendant, who was known to them personally as a bookmaker, in the second room standing with a pencil in his hand. On a table in front of him they observed some pads of paper that appeared to be "the kind and character of pads of paper used in that area where the record shop was located by bookmakers who make book on horse races," and they saw writing on the pads. They then entered the second room without permission by opening the door for the purpose of arresting defendant for bookmaking. They arrested defendant and then secured the evidence introduced at the preliminary hearing by searching the premises. The telephone that the officer answered was located in a third or back room, "entry being made into that room from the center or second room through an opening in a partition which does not have a door." Neither of the officers had a search warrant or a warrant for defendant's arrest.

The trial court held admissible the evidence of what the officers could see by looking through the hole in the door between the room open to the public and the second room that was not. It concluded, however, that what the officers could see from the door was not sufficient to justify their entry without a search warrant to make an arrest, and pointed out that the presence of pads with writing on them, even of the type ordinarily used by bookmakers in the vicinity, was consistent with the legitimate business of a record shop being conducted on the premises. Accordingly, it held that the evidence obtained after the officers entered the second room without a warrant or permission was incompetent, and since the remaining evidence was insufficient, it granted defendant's motion to set the information aside. The People appeal.

The attorney general contends that when the officers looked through the door into the second room, they had reasonable cause to believe that defendant had committed a felony and that he was committing the offense of occupying premises for the purposes of bookmaking in their presence, and that therefore the arrest and search were lawful. (See Pen. Code, § 836, subds. (1), (3) ; *People* v. *Martin*, 45 Cal.2d 755, 761-762 [290 P.2d 855].) We cannot agree with this contention.

When the officers looked through the door they saw nothing that was incriminating. They merely saw defendant standing behind a desk with a pencil in his hand and two pads of paper in front of him. There was writing on the pads. Defendant was operating a record store open to the

public, and just as in the case of any shopkeeper, business-man, or professional man, he might reasonably be expected to have pencils and pads of paper available for making notes and memoranda for use in the legitimate conduct of his business. Moreover, the fact that the pads of paper were of the kind used by bookmakers in the area is of no significance. They were ordinary small pads of paper of the sort that may be purchased in any stationery store and that are undoubtedly used by all sorts of persons for all sorts of purposes. Similar pads may be found in almost every office, and certainly, the fact that bookmakers also use them cannot constitute reasonable cause to believe that everyone using them is engaged in bookmaking.

 The attorney general contends, however, that when what the officers saw is viewed in the light of the fact that another person had been arrested at the record shop for bookmaking the day before and the fact that defendant was known personally to them as a bookmaker, reasonable cause for the arrest appears. It is true that the stipulated fact that defendant was known personally to the officers as a bookmaker might be interpreted as of itself justifying an arrest. Thus the stipulation is consistent with the conclusion that before the officers saw defendant in the record shop they knew he had committed felonies for which he was subject to prosecution, and that therefore they were justified in arresting him for such past offenses whenever he was found. Defendant, however, was not arrested for or charged with any offenses other than the one discovered at the time of his arrest, and neither in the trial court nor on appeal has it been contended that the arrest may be justified as one for some past offense. Accordingly, we conclude that the stipulated fact that defendant was a known bookmaker does not mean that he was currently subject to arrest for past bookmaking, but only that he had that reputation or was known to the officers as a person who had been convicted of bookmaking. As pointed out above, however, before the arrest and search defendant's activities appeared to be perfectly consistent with the lawful conduct of his record business. Defendant was merely present in his office with a pencil in his hand and pads of paper on the table in front of him, and there was no basis for concluding that he was using these items for bookmaking rather than for his business that was then open to the public. Moreover, since there was no telephone in the room where defendant was, or any indication that he had

just completed a telephone call, or that any other person was present, there was absolutely no basis from appearances for concluding that the writing on the pads was in response to a call or calls that might have been made to place bets or to record bets placed by persons visiting the shop.

 The attorney general contends, however, that the officers could reasonably conclude that defendant's apparently innocent activities were bookmaking on the ground that another person had been arrested for bookmaking at the record shop the day before. If it had been stipulated that the other person had been caught in the act of bookmaking on the premises, or that at the time of his arrest, evidence had been obtained that the premises were being used for bookmaking purposes, it might reasonably be contended that when a known bookmaker was found on the premises the next day, there was reasonable cause to believe that he also was occupying them for the purposes of bookmaking. The prosecution made no such showing, however, and the fact that defendant had been a bookmaker in the past or bore that reputation and the fact that another bookmaker had been on the premises the day before, would not of themselves constitute reasonable cause to believe that defendant's conduct, which was perfectly consistent with the lawful conduct of his business, in fact constituted occupancy of the premises for the purpose of bookmaking. (*Pearson* v. *United States,* 150 F.2d 219, 221; *Brown* v. *United States,* 4 F.2d 246, 247; *Baumboy* v. *United States,* 24 F.2d 512, 513; *People* v. *Ford,* 356 Ill. 572, 576 [191 N.E. 315]; see *Brinegar* v. *United States,* 338 U.S. 160, 176-177 [69 S.Ct. 1302, 93 L.Ed. 1879]; *United States* v. *Di Re,* 332 U.S. 581, 592-594 [68 S.Ct. 222, 92 L.Ed. 210]; *Hernandez* v. *United States,* 17 F.2d 373.)

The order is affirmed.

Gibson, C. J., Carter, J., Schauer, J., and McComb, J., concurred.

SPENCE, J.—I dissent.

The evidence admitted at the preliminary hearing clearly showed that defendant had committed, and was committing, a felony at the time of his arrest. The offense with which he was charged is in the nature of a continuing offense, as it covers any person who ''keeps or occupies, for any period of time whatsoever, any . . . place . . . with a book or books, paper or papers . . . or paraphernalia, for the purpose of

recording or registering any bet or bets, . . ." (Pen. Code, § 337a, subd. 2.)

In my opinion, the evidence introduced as the result of the arrest and search was admissible on either of two grounds. First, the search was made as an incident of a lawful arrest under subdivision 2 of section 836 of the Penal Code, and was therefore a reasonable search rather than one violating the constitutional guarantee against "unreasonable searches and seizures." (U.S. Const., 4th Amend., Cal. Const., art. I, § 19.) Second, the search was made as the incident of a lawful arrest and the arresting officers had "reasonable cause" before the arrest and search to believe that defendant had committed, and was committing, a felony. (*People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Boyles*, 45 Cal.2d 652 [290 P.2d 535].)

In reaching the conclusion here that the challenged evidence was admissible, I deem it unnecessary to discuss the first ground above mentioned. That question was raised in *People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528], and *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531]; and I voted for a rehearing in those cases because of doubt concerning the soundness of those opinions. The question is also presented in *Badillo* v. *Superior Court* (S. F. No. 19346), *post*, p. 269 [294 P.2d 23] and it will suffice to discuss it in that case. In the present case, my conclusion may be rested solely upon the second ground above mentioned.

As above stated, the evidence shows that defendant had kept and occupied, and was keeping and occupying, a place with the specified paraphernalia for the specified purpose; and the stipulation shows as a matter of law that the officers had "reasonable cause" to believe that defendant had so done and was so doing. Said stipulation, which was made by the parties for the purpose of the motion to dismiss the information shows that "Officers Nelson and Gough also knew the defendant in this case, James W. Sanders, in person, and that he was known to them as a bookmaker on horse races"; that another person had been arrested on the same premises for bookmaking on the previous day; and that the officers, immediately prior to the entry and arrest, saw defendant standing by a table with a pencil in hand and saw on the table "the kind and character of pads of paper used in that area where the record shop was located by bookmakers who make book on horse races." If such knowledge on the part of the officers does not show as a matter of law that the officers

had "reasonable cause" for believing that defendant had committed, and was committing the offense charged, it is difficult to ascribe any rational meaning to the term "reasonable cause."

To summarize, I am of the opinion that the arrest in the present case was not only a lawful arrest but also one made by the officers upon "reasonable cause"; that the search made as an incident to that arrest was therefore reasonable; and that the evidence obtained as a result of the search was therefore admissible.

I would reverse the order dismissing the information.

Shenk, J., concurred.

Appellant's petition for a rehearing was denied March 21, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.