**People of the State of Illinois, Plaintiff-Appellee,
v. Sal Wexler, Defendant-Appellant.**

**Gen. No. 53,838.**

First District, Second Division.

November 12, 1969.

Sherman, Schachtman & Stein, of Chicago (Jack G. Stein, Albert Brooks Friedman, and Gerald Nussbaum, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

A complaint was filed in the First Municipal District of the Circuit Court of Cook County, charging defendant Sal Wexler with the offense of gambling in violation of Ill Rev Stats 1967, c 38, § 28–1(a)(5). Defense counsel moved to suppress the results of a search of defendant's person, but the motion was denied. Defendant waived a jury trial. Evidence was introduced by the State and defendant rested his case without offering any evidence. He was found guilty and fined $50.

In this court defendant alleges that the magistrate who heard the case did not have jurisdiction to try or sentence him; that the arrest and search was illegal and violated defendant's constitutional rights; and that

he did not understandingly waive his right to a trial by jury.

From the record it appears that on July 11, 1968, Officer Rohan of the Vice Control Division of the Chicago Police Department, watched defendant from across the street at 159 North Wabash Avenue, Chicago. Within a 20-minute period five people approached the defendant and handed him slips of paper with money which the defendant placed in his pocket. Officer Rohan, who had previously made about thirty arrests for gambling, arrested the defendant on that charge, believing he was accepting wagers, and a search of defendant's person revealed seven slips of paper with $101 in currency. The slips represented wagers placed on various horses at several racetracks.

At the hearing on a pretrial motion to suppress the evidence of the slips and money, Officer Rohan testified he had arrested defendant because he suspected him of taking bets. The magistrate denied the motion and admitted the evidence. The privately retained counsel for defendant then waived a jury trial, stating, "We have already entered a plea of not guilty and waived the jury. I am ready for trial."

The Judicial Article now provides that the Circuit Court has unlimited original jurisdiction with one exception; section 8 of Article VI of the Illinois Constitution provides in part: "The General Assembly shall limit or define the matters to be assigned to magistrates." Ill Rev Stats 1965, c 37, § 624, limits those cases that should be assigned to magistrates in the criminal and quasi-criminal area, as follows:

> (a) misdemeanor and quasi-criminal actions in which the maximum punishment authorized by law does not exceed a fine of $1,000 or imprisonment for one year in the county jail or municipal house of correction, or both;
>
> . . .

(d) proceedings for the preliminary examination to determine probable cause, . . . .

Under that section it appears that the instant case should not have been assigned to a magistrate since the maximum penalty for the offense charged exceeds that which magistrates are entitled to hear. The question remains, however, whether the magistrate was without power to proceed, or whether the improper assignment was a matter of venue, and therefore an error that could be waived. We must determine whether section 624 is a jurisdictional limitation and whether a judgment entered in technical violation of the section is void.

Ill Rev Stats 1967, c 37, § 628, provides:

All objections to the propriety of an assignment to a magistrate are waived unless made before the trial or hearing begins. No order or judgment is void or subject to collateral attack merely because rendered pursuant to improper assignment to a magistrate.

It is undisputed that no objection was made to the assignment before the trial began, and the State has cited several civil cases which support the proposition that a magistrate, as a full judicial officer, has the power to hear cases which are improperly assigned to him, and that the assignment is a matter of venue and not authority. Coleman v. Scott, 76 Ill App2d 417, 421, 222 NE2d 5, affd 38 Ill2d 387, 231 NE2d 408; People for Use of Cullerton v. Crawford, 80 Ill App2d 237, 243, 225 NE2d 80.

The defendant argues that the waiver rule was not intended to apply to criminal matters, and he cites People v. Chatman, 38 Ill2d 265, 230 NE2d 879, in support of this contention. In that case the defendant, who was indicted for the crime of gambling, as in the instant case, was arrested pursuant to a warrant, and after a hearing before a magistrate was held over to the

403

Grand Jury which indicted her. At the trial she argued that she had already been in jeopardy before a magistrate who had authority to convict her, and therefore she could not be put to trial again without violation of her constitutional rights. The Illinois Supreme Court pointed out two things; that the magistrate had no "authority to dispose of her cause" since the offense carried penalties in excess of those which could be heard by a magistrate; and that even if it had the authority it had not been exercised, and therefore, the defendant had never been in jeopardy.

The second argument distinguished between the situation of one being placed on trial and one merely appearing before a judicial officer for a determination as to whether or not probable cause exists to hold the defendant over to the Grand Jury. In the Chatman case it was the latter circumstance which existed, and the court reasoned that such a proceeding was not "jeopardy" within the intendment of the Federal and State constitutions.

In the case before us the defendant relies upon the first part of the court's decision in Chatman, and particularly upon the statement by the court at page 268, that "The penalty prescribed for an offense is therefore determinative of the magistrate's authority for disposition." It is argued that the word "authority" is synonymous with jurisdiction or power, and defendant reasons that the Supreme Court has concluded that the statutory provisions which specify the maximum criminal offenses to be assigned to magistrates delineate the boundaries of the magistrates' power to act. Defendant argues further that if magistrates hear cases which carry more severe sentences than those provided for, their decisions are nullities. It is also argued that this interpretation is supported by the statement in Chatman that magistrates are without authority to hear

criminal cases carrying maximum penalties which are greater than those set out in section 624.

■ It is our conclusion that the defendant has misconstrued the import of the Chatman case. Careful reading of Chatman indicates that the Supreme Court was saying the defendant had never been placed in jeopardy before the magistrate because it was within the defendant's power to prevent a decision by the magistrate as to the innocence or guilt by simply objecting to the assignment. We find no indication that the magistrate could not have reached a binding determination if the defendant had so consented. Under this view, the court's use of the word "authority" does not mean power, but rather the right of the magistrate to decide the case regardless of defendant's objection. It is our belief that in Chatman, as in the instant case, the magistrate would have the power to try the case, but not without the consent of the defendant, or at least without the defendant waiving the right to object to the assignment of the cause to the magistrate. We feel that this view of the law is consistent with the statutory provision that objections to the propriety of assignments to magistrates are waived unless made prior to the trial or hearing. That provision does not distinguish between criminal and civil actions, and we see no reason why it should. It is therefore our view that the defendant in the instant case waived any right to have the case heard by a judicial officer other than a magistrate, and that he is now bound by that judgment.

■■ The defendant next argues that his motion to suppress should have been allowed. The answer to this question hinges on the propriety of defendant's arrest. If there was probable cause for the police officer who had observed him, acting as a reasonable and prudent man, to believe the defendant was committing a crime,

405

the officer was entitled to arrest him and make a limited search of his person. On this issue the defendant first argues that at most, the police officer suspected him of accepting wagers, which is not a crime; it is only the making of wagers that is a criminal offense. Thus, the officer arrested the defendant for doing nothing illegal, making invalid the arrest and subsequent search, and the items found on defendant's person should not have been admitted into evidence, and the motion to suppress should have been sustained. However, when one places a bet with another, both are "making wagers." One is betting that a certain horse will finish the race in a certain position, while the other is betting that it will not. Each makes a wager against the other. That would seem to be the only correct interpretation of the statute, thus narrowing the question of whether the police officer had probable cause to believe the defendant was accepting money and bet slips, thereby committing the crime of making wagers.

The test to be applied is stated in People v. Macias, 39 Ill2d 208, 213, 234 NE2d 783, where the court said:

> "We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act. People v. McCrimmon, 37 Ill2d 40; People v. Jones, 31 Ill 2d 42."

Also see People v. Roberta, 352 Ill 189, 185 NE 253.

■ Therefore, it is necessary to determine whether Officer Rohan acted as a reasonably prudent man when he believed the defendant was committing a crime and consequently arrested him. Officer Rohan was the only witness to testify at the hearing on the motion to suppress. According to his testimony he had made 25 or 30 previous arrests for gambling, as a member of the gambling unit; he had a clear, unobstructed view of defendant for about twenty-five minutes before arresting him, during which time he saw five people approach the defendant and offer him slips of paper and money which defendant put into his pocket.

The defendant argues that the police officer could have put a more innocent interpretation on his actions; however, the defendant misplaces the applicable test, for the police are not obliged to view conduct in a manner to construe it as innocent; their job is to apprehend criminals, and if the conduct they observe can fairly be interpreted as criminal, they are entitled to arrest the suspect. In the case before us, the arresting officer was familiar with conduct incident to illegal wagering, and he stated in his testimony that his suspicion of the defendant's actions was based on his experience.

In support of the argument that the officer had insufficient information to make an arrest, the defendant cites two Federal opinions; United States v. Asendio, 171 F2d 122 (3d Cir), and Perry v. United States, 336 F2d 748 (DC Cir). In Asendio the defendant had been seen standing on a downtown street corner, accepting a small package. He was not arrested on the spot, but was followed to his hotel room where the police made a search without a warrant. The court felt that the act the officer had witnessed was not sufficient to amount to probable cause for arrest or search.

The facts in the instant case, however, distinguish it from those in Asendio, in which case only one transac-

tion was observed. We feel that if there had been four more such transactions within a time limit of twenty minutes—as in the case before us—the court in Asendio would have found that there was probable cause. An isolated act may appear innocent, but a series of similar transactions, by virtue of the repetition, may be sufficient to support an arrest. It is our opinion that the facts presented on the motion to suppress in the instant case adequately demonstrated that the police officer acted reasonably in arresting and searching the defendant, and that the motion was properly denied.

In Perry v. United States, supra, the police officers saw the defendant exchange "something" with a known addict, and the court felt that did not constitute a probable cause upon which to base an arrest and search. The facts in that case cannot be compared to those in the instant case.

█ Finally, the defendant argues that he was denied his constitutional right to a jury trial because his attorney's purported waiver of such trial was ineffective. The attorney, who was privately retained by defendant and who represented him at the trial, is listed as "of counsel" on the briefs filed in the case. The basis of defendant's claim is that he was not informed by the trial court of his constitutional right to a jury trial. After the motion to suppress had been denied defense counsel said to the court: "We already entered a plea of not guilty and waived the jury. I am ready for trial."

The defendant places his principal reliance on People v. Turner, 80 Ill App2d 146, 225 NE2d 65, in which case the court held that the defendant did not knowingly in open court waive his right to a jury trial in accordance with Ill Rev Stats 1965, c 38, § 103–6. The court reversed and remanded the case for a new trial. The defendant, an illiterate, had told the court he did not understand what a jury trial was, and the trial court instructed defense counsel to explain it to the defendant.

408

After a conference between defense counsel and defendant, the latter placed his "X" on a jury waiver, although the trial court did not advise him of his right to a jury trial, nor did the court determine whether defendant had been so instructed by his counsel.

In the opinion in Turner, the court stated at page 150: "It is uncontradicted that the defendant was an illiterate. . . . Under all of the circumstances of this case we find that the right to a jury trial was not understandingly waived by defendant in open court."

In People v. Crable, 80 Ill App2d 243, 225 NE2d 76, the court implied that its assessment of jury waivers would depend in part upon the question of whether the defendant was illiterate when it said at page 247: ". . . there is no allegation that the defendant was illiterate." In the case before us it would appear that the defendant was far from illiterate and was represented by a privately retained attorney. Under such circumstances a trial court should be entitled to rely on the attorney's statements on behalf of his client.

In People v. Melero, 99 Ill App2d 208, 211, 240 NE2d 756, defense counsel had informed the trial court that his client might have some difficulty because he did not speak the English language well. The court then asked, "Do you want me to hear the case or do you want a jury trial?" Defense counsel answered, "Waive the jury, Your Honor." The Appellate Court held the waiver effective, and when it developed that the defendant did understand the English language, the court said in its opinion:

> "By permitting his attorney, in his presence and without objection on his part, to waive his right to a jury trial, defendant must be held to have knowingly acquiesced in that action. Also, the trial court was entitled to rely on the professional responsibility of defendant's attorney that when he informed

the court that his client waived a jury, it was knowingly and understandingly consented to by his client."

In People v. Novotny, 41 Ill2d 401, 410, 244 NE2d 182, the Illinois Supreme Court quoted with approval from Martelly v. State, 230 Md 341, 348, 187 A2d 105 (1963), as follows:

"It is settled law that when an accused is present in court and represented by competent counsel, he is bound by the actions and concessions of counsel, and that even constitutional rights may be waived in the course of a trial."

In support of its propositions the Supreme Court cited numerous cases and authorities.

Under the rule laid down the defendant in the instant case is bound by the jury waiver understandingly made by defendant through his attorney. The defendant was present; there is no indication that he was illiterate; and he remained silent while the attorney made the waiver. Accordingly, the defendant's silence was tantamount to an acceptance and approval of the attorney's actions.

For the reasons stated, we hold that the magistrate did have jurisdiction of the case; that the motion to suppress was correctly denied; and that defendant was not unconstitutionally deprived of his right to a jury trial. The judgment of the Circuit Court is affirmed.

Affirmed.

LYONS, P. J. and BURKE, J., concur.