Cortez WILLIS, Petitioner,

v.

The STATE of Oklahoma and Ray H. Page, Warden, Oklahoma State Penitentiary, Respondents.

No. A–15462.

Court of Criminal Appeals of Oklahoma.

March 17, 1971.

J. B. Champion, Jr., Ardmore, for petitioner.

G. T. Blankenship, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for respondents.

BRETT, Judge:

Petitioner, Cortez Willis, filed his application with this Court for issuance of the Writ of Habeas Corpus alleging that he has obtained newly discovered evidence which could not have been found by the exercise of due diligence concerning the identification of petitoner at his trial, wherein he was sentenced to serve five years in the Oklahoma State Penitentiary. Insofar as this appeal has been considered by the Court and was subsequently referred to the District Court for an evidentiary hearing, it is now being considered as an appeal under 22 O.S.Supp.1970, §§ 1080–1088, which provides for post conviction remedies.

On February 11, 1966, petitioner was tried in the District Court of Carter County, Oklahoma on the charge of Grand Larceny, and was sentenced to the state penitentiary. Petitioner's appeal was considered by this Court under Case No. A–14052 cited as 435 P.2d 428. No brief was filed and the appeal was considered by this Court for fundamental error. None was found and petitioner's conviction was affirmed.

In this matter filed with the Petition for Writ of Habeas Corpus is an affidavit from one Adrian Alford. The affidavit was executed May 8, 1967, in the State of Texas, County of Anderson. In the affidavit Mr. Alford, in part, recites:

"As I testified at the trial, I had never seen Cortez Willis before that night, and if he is the man who was there, I saw him for only a few minutes under the worse possible conditions to be able to recognize him again. It was night, very dark, and the only light was car light— we talked for only a few minutes. I told at the trial that I thought Mr. Willis was the man, but I wonder whether my memory of him was from that night or from seeing his picture, as Lott and I were shown the pictures of Mr. Willis by the officers. No other pictures were

shown to us at that time, and I felt I had to say at the trial in the interest of fairness that I wasn't sure Willis was the man because I might be remembering the picture which was shown to us several times." (See Appendix A hereto)

There was also filed the affidavit of Miss Ann LaRoche, who was formerly the secretary of petitioner's attorney, and who now lives in Houston, Texas. Her affidavit is essentially hearsay and is of little value with reference to this matter.

On December 10, 1969, this Court ordered the District Court of Carter County to conduct an evidentiary hearing into the matter set forth in the petition and entered on July 22, 1970, an order. On August 10, 1970, that Court did conduct a hearing, but without petitioner being present. At that hearing petitioner's attorney testified to the best of his ability concerning the identification of petitioner at his trial, by the two witnesses from the State of Texas. The Court rendered its findings at the conclusion of the evidentiary hearing, which were filed in this Court on September 18, 1970. In addition to the pleadings filed by petitioner's attorney, petitioner has filed several pro se instruments in this Court including a petition for writ of mandamus.

In order to determine the merits of this petition, it has been necessary for the Court to reconsider the record of trial, which was filed with petitioner's earlier appeal. The record reflects that the two men from Texas, Mr. Adrian G. Alford and Mr. Earnest Lott testified that they drove a truck to Marietta, Oklahoma; that it was in the night time when they met a person by the name of Willis, with four other men; that the men took the truck and loaded the pipe on it while the two Texans got something to eat; that later they were driven to where the truck with the pipe was parked; that the man they assumed was Willis gave them a receipt for the pipe and they returned to Palestine, Texas. Both men testified that it was a dark night, and the only light was from the vehicle lights. Approximately one month after the oil well pipe was stolen, the Sheriff of Carter County went to Palestine, Texas with only one photograph of petitioner. The Carter County Sheriff called upon Mr. Adrian Alford and Mr. Earnest Lott for them to indicate whether or not the photograph was a picture of the man from whom they received the pipe. Mr. Alford did not with certainty positively identify petitioner as the man but stated, "I believe that is he." Of the two men, Mr. Alford was the only one who talked to the person who was supposed to have been Mr. Willis. Part of the testimony of Mr. Adrian Alford on direct examination is as follows:

"Q. All right. Now, is Mr. Willis in the courtroom now?

A. I believe that's him. It has been a long time since I've seen that man.

Q. Tell me, is he in the courtroom at this time?

A. (Pause) I believe that he is.

Q. You believe that he is?

A. It has been a long time, and that was at night.

Q. All right. Now, can you tell us—just looking carefully this way—and tell us now, is he in the courtroom at this time?

THE COURT: You have already asked him that question."

On page 114 of the Casemade, defense counsel asked Mr. Alford the following on cross-examination:

"Q. Now, when the sheriff came down there, did he bring you some pictures—how many pictures did he bring with him?

A. I believe one—was all I remember.

Q. You mean the line-up you had to pick the defendant out of consisted of one picture?

A. That's all I remember seeing.

Q. He showed you one picture and asked you if this is Mr. Willis, is that right?

A. Yes sir."

On page 115 defense counsel asked:

"Q. What—now, now, I'll ask you this, has the county attorney pointed this man out to you today?

A. Sir?

Q. Has Mr. Smith pointed him out to you today?

A. Yes sir.

Q. In other words you mean Mr. Rudd brought you only one picture identified, to see, and Mr. Smith pointed the man out to you. Is that right sir?

A. He asked me if that was the man.

Q. In other words he said: 'Is this the man?' And you said: 'I believe it is.' Is that right sir?

A. That's right."

The record is not entirely clear where Mr. Alford was in Palestine, Texas when he was shown the picture of petitioner; but it is quite clear that Mr. Earnest Lott —while not in custody—had been called to the Anderson County Jail when the picture was shown to him. Also, it is clear that Mr. Lott did not talk to the man, who represented himself as "Mr. Willis," and did not hear all the conversation between Alford and the man. Mr. Lott, a negro man, gave the following answers on direct examination: (CM 128)

"Q. All right. Now, later on did Mr. Rudd talk to you down at Palestine?

A. Mr. who?

Q. Rudd, the sheriff of Carter County.

A. Oh, yes sir.

Q. All right, and where were you when he talked to you?

A. At the Anderson County Jail.

Q. Where?

A. At the Anderson County Jail

Q. At the county jail?

A. Yes sir.

Q. All right. Now, I will hand you a picture here, which has been marked as State's Exhibit, and will ask you to take a look at it, this picture here, did you ever see that picture before?

A. Yes sir.

Q. Where did you see it?

A. Sheriff showed it to me at the jail, Anderson County Jail."

Petitioner's post conviction pleadings are made in an effort to challenge the manner in which he was identified at his trial and in support of his challenge he attached the affidavit of Adrian Alford.

After reviewing the records and the affidavits filed in support of this petition, it is apparent that the manner of identifying Cortez Willis did not meet the test set forth in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. The Lawyer's Edition Report recites as follows:

"Convictions based on eyewitness identification at trial, following a pre-trial identification by photographs, will be set aside on the ground of improper identification only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The record clearly shows that approximately a month after the alleged incident occurred, the two witnesses were approached by the sheriff of Carter County with one photograph for them to identify; and in face of the record of trial, it is impossible to say definitely that the "in-court identification" was not the result of both witnesses being shown the one photograph of petitioner prior to trial.

In discussing the employment of photographs for extrajudicial identification, the United States Supreme Court said in Simmons v. United States, *supra*:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they

suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."

In the instant matter, the trial record reflects that sometime later, after petitioner had been arrested, several other photographs were sent to Palestine, Texas for the witnesses to look at, but they failed to identify any of them.

Therefore, after reviewing the matters presented to the Court, as a post conviction proceeding, which we choose to treat as an appeal from the district court hearing, we are compelled to find that the courtroom identification of petitioner was sufficiently tainted by the extrajudicial identification of petitioner to constitute reversible error. We have also considered the receipt, given at the time of the alleged crime with that placed into the record by petitioner at the time of his trial, but we are unable to say that both receipts were written by the same person.

It is therefore ordered that petitioner's conviction in the District Court of Carter County, Oklahoma, Case No. 5824, in which judgment and sentence was imposed on February 11, 1966, is Reversed; and that petitioner is hereby ordered released from further confinement under that judgment and sentence.

NIX, J., concurs.

BUSSEY, P. J., not participating.

## APPENDIX A
## AFFIDAVIT

STATE OF TEXAS  }
COUNTY OF ANDERSON }

My name is Adrian Alford and I live in Palestine, Texas on Route #1. I, along with a colored boy named Lott, testified for the State of Oklahoma against Cortez Willis. Before I was forced to go to Oklahoma, we were told by the officers that there would be trouble if we didn't cooperate with the state. They also questioned us and we thought we were going to be involved in it. As I testified at the trial, I had never seen Cortez Willis before that night, and if he is the man who was there, I saw him for only a few minutes under the worst possible conditions to be able to recognize him again. It was night, very dark, and the only light was car lights and we talked for only a few minutes. I told at the trial that I thought Mr. Willis was the man, but I wonder whether my memory of him was from that night or from seeing his picture, as Lott and I were shown the picture of Mr. Willis by the officers. No other pictures were shown to us at that time, and I felt I had to say at the trial in the interest of fairness that I wasn't sure Willis was the man because I might be remembering the picture which was shown to us several times. The colored boy, Lott, had no better chance to see Mr. Willis than I, and he did not talk directly to the man we met. It is almost impossible to identify a person positively where the light was no better than this. I know that the officers and the County Attorney talked to both of us, Lott and me, about cooperating, and I would not have come to Oklahoma to testify if I had not been forced to do so.

FURTHER, AFFIANT SAYETH NOT.

(s) Adrian Alford
ADRIAN ALFORD

Subscribed and sworn to before me this 8th day of May, 1967.

(s) Dot Hinson   Dot Hinson

Notary Public, Anderson County, Texas

My commission expires June 1, 1967.