Frederick Walter BOWEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-16515.

Court of Criminal Appeals of Oklahoma.

May 24, 1972.

Judd L. Black, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for appellee.

BRETT, Judge.

Appellant, Frederick Walter Bowen, hereinafter referred to as defendant, was convicted in the District Court of Oklahoma County Oklahoma, Case No. CRF 70–1398, of second degree burglary, after former conviction of a felony, and sentenced to ten (10) years imprisonment. Judgment and sentence was imposed on September 18, 1970, and this appeal perfected therefrom.

On appeal defendant contends the trial judge, as a special judge, had no authority to try a felony case; that the trial court erred in allowing an in-court identification of defendant, tainted by an improper pretrial viewing; and that the trial court erred in amending the information.

It is defendant's first contention that a "special judge, under the constitutional and statutory limitations of the office, is without the authority to try" a felony case. Defendant was charged by information filed in the District Court on June 4, 1970. After defendant was arraigned and entered a plea of not guilty, the case was transferred by order of District Judge Clarence Mills as presiding Judge of the Criminal Division of the District Court of Oklahoma County, to Special Judge Robert L. Berry. Judge Berry, a lawyer, at that time was a duly appointed special judge of the District Court of Oklahoma County. No objection was made to the assignment.

Judge Berry presided over defendant's trial and imposed judgment and sentence in accord with the jury's verdict. Defendant argues that a special judge has no authority to hear a felony case; thus the transfer order to Judge Berry was invalid; and there was a lack of jurisdiction to impose the judgment and sentence.

Under the new judicial article of the Oklahoma Constitution, effective January 13, 1969, the State is divided into judicial districts and there is one district court for each judicial district. The Constitution provides that the "District Court shall have unlimited original jurisdiction of all justiciable matters." Article VII, § 7. "The Judges of the District Court shall be District Judges, Associate District Judges, and Special Judges." Article VII, § 8(a). "The jurisdiction of Special Judges shall be limited as may be prescribed by statute." Article VII, § 8(h). From a reading of the entire judicial article, particularly these key provisions, it is apparent our Constitution vests original jurisdiction of all criminal cases for state offenses in one trial court, the District Court, and the judges of said court, including special judges. The only constitutional limit on the jurisdiction of a special judge is "as may be prescribed by statute." Nothing in the Constitution expressly prohibits a special judge from hearing a felony case. Since the district court has jurisdiction over felonies, any judge of the district court, including special judges, has authority to hear a felony case, unless expressly denied.

As to the statutes, 20 O.S.1970, § 91.3, provides that, unless otherwise indicated, the term "district judges" in the Oklahoma Statutes includes associate district judges and special judges. Subject to supervening rules of the Supreme Court, 20 O.S.1970, § 95.6, provides that judges in a judicial district may adopt practices in regard to the assignment and transfer of cases that will facilitate their disposition, and "nothing herein shall prevent a Judge from transferring a case to another Judge who has consented to such transfer." There is no re-

striction on the class of judge. A judge to whom a case has been assigned has continuing authority over it until its final disposition or until removed from him by the appointing authority. 20 O.S.1971, § 95.7.

As to the express authority of special judges, 20 O.S.1971, § 123 provides:

"A. Special judges may hear the following actions: (1) (a) Actions for the recovery of money where the amount claimed does not exceed Two Thousand Five Hundred Dollars ($2,500.00) and counterclaim or setoff does not exceed Two Thousand Five Hundred Dollars ($2,500.00), and (b) all default matters, except that nonlawyer special judges may not hear causes which are for greater sums than Four Hundred Dollars ($400.00).

(2) Actions for forcible entry and detainer where the defendant does not assert title to the land or a boundary dispute.

(3) Actions for replevin where the amount in controversy does not exceed Two Thousand Five Hundred Dollars ($2,500.00), except that nonlawyer special judges may not hear such actions where the amount in controversy exceeds Four Hundred Dollars ($400.00).

(4) Misdemeanors, provided, however, that special judges who are not lawyers may not hear criminal actions where the punishment prescribed by law exceeds a fine of Two Hundred Dollars ($200.00), or imprisonment in a county jail for thirty (30) days, or both such fine and imprisonment except by written consent of all parties.

(5) When there is no district or associate district judge present in the county or when they are disqualified, the issuance of a temporary injunction or restraining order and writs of habeas corpus, but this subdivision shall not embrace nonlawyer special judges.

(6) Perform the duties of magistrate in criminal cases.

(7) Other actions and proceedings, regardless of court rules, where the parties agree in writing, at any time before trial, to the action being heard by a special judge.

B. Special judges shall be authorized to serve as referee in any matter before gardless of court rules, where the parties the district court and to serve as referee in cases on the juvenile docket with the approval of the judge regularly assigned to the juvenile docket and the chief judge of the district court."

Also 20 O.S.1971, § 124 provides:

"All objections to the determination of an action by a special judge are waived unless made before the trial or hearing begins. No order or judgment is void or subject to collateral attack merely because it was rendered by a special judge."

■ Section 123, subd. A lists specific actions that a special judge "may hear," plus "other actions" where the parties agree in writing. This section is permissive in nature, and it is significant that this section is not phrased in language limiting a special judge's jurisdiction to only the enumerated actions. It is one thing to say a special judge "may hear" certain actions, and quite another to deny his "jurisdiction" to only specified matters. In short, the statute does not expressly divest a special judge of jurisdiction over, or authority to hear, a felony case. Defendant's contention that a special judge only has jurisdiction over preliminary examinations and misdemeanor cases is erroneous.

■ But perhaps most significant is Section 124 which provides that all objections to a determination by a special judge are waived "unless made before the trial"; and that no judgment is subject to attack merely because it was rendered by a special judge. Although defendant did not make a timely pretrial objection to the assignment of the case to a special judge, he alleges the special judge had no jurisdic-

tion and that a jurisdictional error is never waived. It is true that jurisdiction of subject matter can neither be waived nor conferred by consent; and an objection to lack of judisdiction may be raised at any time or stage of the proceeding. 21 Am.Jur.2d, Criminal Law, § 379. However, this is not a question of lack of jurisdiction of the trial court; rather it is a question of whether the trial judge was a proper judicial officer to hear the case.

■ There can be no question that the district court was the proper forum and had jurisdiction of the subject matter. There is no question that the special judge was a judge of that court. Neither the Constitution or statutes deprive a special judge of the power to hear an action that is properly brought in the district court where neither party objects before the trial.[1] A special judge may hear those actions specified in Section 123, subd. A over the objection and without the consent of the parties. The only limit on a special judge's power or authority to hear any action is that on all actions not specified in Section 123, subd. A either party may object *before trial* and thus prevent the special judge from hearing that case. As provided in Section 124, all objections to the determination by a special judge are waived unless made before trial and no judgment is subject to collateral attack merely because it was rendered by a special judge. Thus, if there is no pretrial objection, a special judge may hear any justiciable matter properly before the district court. Since there was no pretrial objection to the assignment of the case to a special judge, we hold the special judge had the authority and power to hear the case.

The decision of People v. Wexler, 116 Ill.App.2d 400, 254 N.E.2d 95 (1969), under similar facts is instructive to the question herein. The defendant, Wixler, convicted of gambling in the Circuit Court of Cook County, Illinois, claimed that the magis-

---

1. Professor George Fraser, Oklahoma's New Judicial System, 21 Okl.Law Review 373 (1968).

trate who tried the case and sentenced him did not have jurisdiction. The Illinois Constitution provided the Circuit Court has unlimited original jurisdiction with the exception that the General Assembly "shall limit or define the matters to be assigned to magistrates." The Illinois Statutes, § 624, limits those cases of a criminal nature to be assigned to magistrates to (a) misdemeanor and quasi-criminal actions with maximum punishment of $1,000.00 fine or one year in jail, and (b) preliminary examinations. The Illinois Statutes, § 628, further provides that all objections of an assignment to a magistrate are waived unless made before trial; and that no judgment is void or subject to collateral attack merely because rendered pursuant to improper assignment to a magistrate. There was no objection before trial to the assignment of Wexler's case to a magistrate, but on appeal defendant claimed a magistrate had no authority to hear a matter not listed in the statutes. The state argued the magistrate was a full judicial officer with power to hear cases improperly assigned to him, and that "the assignment is a matter of venue and not authority." The court held the magistrate had the authority to hear the case, stating:

"[I]t was within the defendant's power to prevent a decision by the magistrate as to the innocence or guilt by simply objecting to the assignment. We find no indication that the magistrate could not have reached a binding determination if the defendant had so consented. Under this view, . . . the word 'authority' does not mean power, but rather the right of the magistrate to decide the case regardless of defendant's objection.

. . . [T]he magistrate would have the power to try the case, but not without the consent of the defendant, or at least without the defendant waiving the right to object to the assignment of the cause to the magistrate. We feel that this view of the law is consistent with the statutory provision that objections to the propriety of assignments to magistrates are waived unless made prior to the trial or hearing. . . . It is therefore our view that the defendant in the instant case waived any right to have the case heard by a judicial officer other than a magistrate, and that he is now bound by that judgment." 254 N.E.2d at 98.

The constitutional and statutory provisions construed in the Illinois case are almost identical to our provisions, and we find the reasoning of the court in Wexler most persuasive.

It is defendant's second contention that the trial court erred in allowing an in-court identification of defendant by a witness, M. A. Weingartner, which was tainted by an improper pretrial identification of defendant, citing in support Willis v. State, Okl.Cr., 482 P.2d 623 (1971). The record shows that after this witness was called, the jury was excused and a nonjury hearing was held on whether there had been an improper pretrial viewing of defendant by the witness which would render his testimony inadmissible. This witness, a salesman at Sears, testified he sold a Star Drill to the defendant. A Star Drill was found at the scene of the burglary. As to pretrial viewings of defendant, the witness said he had previously seen defendant in person on two occasions, at the preliminary examination and at the store where the witness sold defendant a Star Drill. The witness had also picked out defendant's photograph from a group of six photographs brought to him by a police officer. The witness was asked to pick out from the photographs the man who had purchased the equipment. The witness expressly stated he could have identified defendant as the man who purchased the items even if he had never seen the photographs, that he could identify defendant independent of and without benefit of the photograph, and that the photographs did not influence his identification. The court then allowed the witness to testify before the jury where he positively identified defendant and stated his identification was independent of the photographs shown him by the police.

A lineup or any pretrial exhibition of accused to a potential eye-witness is a critical stage of the criminal prosecution and absence of counsel at such a pretrial exhibition calls in question the admissibility of the witness's in-court identification. United States v. Wade, 388 U.S. 218, 878 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). However, a pretrial "identification of an accused without notice to or presence of counsel does not render inadmissible the in-court identification of an accused by an identifying witness at the exhibition where the trial court, outside the presence of the jury, hears defendant's motion to suppress and a determination is made that the in-court identification has an independent source come at by means sufficiently distinguishable to be purged of the primary taint of the illegal pre-trial identification." Stewart v. State, Okl.Cr., 458 P.2d 646 (1969).

Furthermore, "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, at 384, 88 S.Ct. 967, at 971, 19 L.Ed.2d 1247 (1968). In the instant case we do not find the photographic identification procedure was impermissibly suggestive as to indicate the likelihood of irreparable misidentification. The witness was shown six photographs and there is no indication defendant's photograph was singled out by police, or the witness told defendant was the prime suspect, or that defendant had a criminal record. Under these facts there is no showing the procedure was impermissibly suggestive and we conclude the trial court properly allowed the witness to testify before the jury and identify defendant.

It is defendant's third and final proposition that the trial court erred in overruling his motion for mistrial and demurrer to the evidence based on a defect in the information as to the owner of the burglarized property. The information charged in substance that defendant made a forcible entry through the roof and into the Edmond Medical Clinic, which building was under the control of Bill Barrett, with the intent to steal therefrom the property of the Edmond Medical Clinic. At the trial James William Barrett, Sr. testified that he owned a pharmacy in the Edmond Medical Clinic which had been unlawfully entered and property stolen. Barrett further testified that he and two other men owned the building named the Edmond Medical Clinic, but that he individually owned the burglarized pharmacy. The defendant moved for a mistrial claiming a fatal variance in the charge and the proof. Out of the jury's presence the trial court denied the mistrial and ordered the information amended, inserting the name "Bill Barrett" in the lieu of the words "Edmond Medical Clinic" to read that the stolen property belonged to Barrett and not the medical clinic.

It is not error to "amend the information in matter of form or substance, where the same can be done without material injury to the defendant, even though the trial may have begun." Orum v. State, 45 Okl.Cr. 193, 282 P. 899 (1929). Also White v. State, Okl.Cr., 458 P.2d 322, at 323 (1969). 22 O.S.1971, § 410, provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Also, 22 O.S.1971, § 406, provides:

"When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

We conclude the amendment of the information was not a matter of substance

which prejudiced the rights of the defendant upon the merits of the case. The defect in the information was not material and there was sufficient certainty in the charge that defendant was not surprised or otherwise prejudiced.

 Likewise we find no merit to defendant's further complaint that the proof did not identify Bill Barrett, since the witness's name was James William Barrett, Sr. It is apparent in the record that Bill Barrett and James William Barrett, Sr. are one and the same. The "general rule is that one may be designated in legal proceedings by the name by which he is commonly known, although not his true name, even though he may be known both by the name by which he is commonly designated and by his true name." Smith v. State, 34 Okl.Cr. 318, at 321, 246 P. 883 (1926). We find there was no prejudicial surprise or jeopardy problem arising from this technical defect.

Therefore, having considered defendant's assignments of error and finding them without merit, we conclude that the judgment and sentence should be and the same is hereby affirmed.

BUSSEY, P. J., and SIMMS, J., concur.