**Rex Allen WALKER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–805.**

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1977.

Edwin McComas, Elk City and Michael W. Blevins, Sayre, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Michael Darrah, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge.

Appellant, Rex Allen Walker, hereinafter referred to as defendant, was charged with the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1974, § 701.2, and was tried and convicted in the District Court, Beckham County, Case No. CRF–75–56. Pursuant to the jury's verdict, the defendant was sentenced to serve an indeterminate term of not less than ten (10) years nor more than life in the Oklahoma State Penitentiary. From said judgment and sentence, the defendant brings this timely appeal.

Briefly stated the evidence adduced at trial is as follows: The defendant had been living with the deceased, Oscar Staley, and his family for awhile and had worked on Mr. Staley's farm. Gobel Music testified that he was at the Staley's residence at approximately 5:15 p. m. on August 25, 1975. He stated that the defendant arrived at around 5:20 p. m. He further testified that Mr. Staley and the defendant had an argument about when to train a bird dog. They had another argument when the defendant walked into the barn carrying a mug which contained an unknown beverage. Mr. Staley told the defendant that he did not allow any drinking in his barn and grabbed the mug out of the defendant's hands. Mr. Music left the Staley's residence at 6:05 p. m., and Mr. Staley and the defendant remained at the residence.

Raymond Hargues, who was a gasoline attendant at a station near the Staley's residence, testified that about 6:40 to 6:45 p. m. the defendant came to the station and filled his tank with gasoline. He was driving the deceased's pickup truck. The defendant's shirt was torn in the back, and he stated that he was going to Detroit, Michigan, to see horse races. Mr. Hargues stated that prior to the defendant's arrival, he had heard two or three gunshots coming from the area of the Staley's residence.

Roscoe Mullinex, Jr., bartender at the Rock Island Bar in Elk City, Oklahoma, testified that the defendant came into his bar sometime between 6:45 and 7:00 p. m. on August 25, 1975. The defendant had previously been in the bar that day from 2:00 p. m. until 4:00 p. m., and had consumed several beers. When he came in the second time he was in a hurry and only stayed for approximately three minutes. His shirt was torn in the back, and he used the back door, whereas he had used the front door before.

Jimmy Ray Henley, who lives behind the Rock Island Bar testified that when he went to his window to watch the fire truck as it came down the street, he saw a pickup truck leaving the parking lot behind the bar with great haste.

Aubrey Higdon, who lives on a farm in Twitty, Texas, testified that on August 25, 1975, the defendant came to his farm and asked for directions to Ft. Worth, Texas. He stated that the defendant's shirt was torn.

At 6:50 p. m. on August 25, 1975, Douglas Britton, the Fire Chief for the Elk City Fire Department, responded to a fire at the Oscar Staley's residence. He estimated that the fire had been burning for approximately thirty minutes to an hour. There were two vehicles at the residence. A search of the area revealed the charred remains of a male and three expended 410 gauge shotgun shells. A wallet and a watch were discovered on the body, and it was determined that the charred body was Oscar Staley. Sid Cookerly, an agent with the Oklahoma Bureau of Investigation, examined the three shotgun shells and determined that they had been fired. However, the .410 gauge shotgun was never found.

Fred Jordan, Associate Chief Medical Examiner for the State of Oklahoma, performed an autopsy on the decedent. He determined that there were two wounds, one wound to the back of the chest, and another wound to the back of the neck. These wounds were caused by the discharge of a shotgun.

On August 26, 1975, a material witness warrant was issued for the defendant. The defendant was arrested in Ft. Morgan, Colorado. The defendant was informed of his

Miranda rights. He waived his rights to counsel at that time and his right to remain silent. He engaged in a conversation with police officers, which they recorded. The defendant stated in this recorded conversation, which was played for the jury, that he last saw Oscar Staley alive on August 25, 1975, between 5:00 and 5:30 p. m. He stated that on this day he had been visiting with Gobel Music, Mrs. Staley, and Mr. Staley at the Staley residence. The defendant said that he had been living with the Staleys and that Mr. Staley owned a .410 gauge shotgun. He said that he left for Colorado at approximately 5:30 p. m., that he had permission to use Mr. Staley's truck and that he did not stop for gasoline in Elk City, Oklahoma, but did stop in Amarillo, Texas.

Following this conversation with the defendant, Mr. Cookerly received permission from the defendant to search the truck he was driving. As a result of the search, he found a white cloth which had a dark stain on it. William Caveny, a forensic chemist for the Oklahoma State Bureau of Investigation, performed several tests on this cloth and discovered the presence of nitrate. He testified that gun powder contains a heavy concentration of nitrate.

The defendant's first witness was his father, Jake Walker, who testified that his son had talked to him about trading horses.

D. C. Armstrong testified that Oscar Staley told him in August of 1975, that the defendant was going to Colorado to sell a colt for him.

The defendant's final witness was Robert Haines, the owner of a wrecker service. He testified that the defendant's pickup truck would not run.

■ The defendant's first assignment of error is that the evidence was insufficient to sustain the verdict. This Court has consistently held that where there is competent evidence in the record from which the jury might reasonably conclude that the defendant is guilty, the case will not be reversed because of insufficiency of the evidence. See, *Mansfield v. State*, Okl.Cr., 556 P.2d 632 (1976), the *Box v. State*, Okl.Cr., 505 P.2d 995 (1973). Upon carefully reviewing the testimony, we conclude that there was sufficient circumstantial evidence to prove that the defendant committed the crime of Murder in the Second Degree. The circumstantial evidence in this case meets the standards set by this Court in *Jones v. State*, Okl.Cr., 523 P.2d 1126 (1974), wherein we stated:

> "Where circumstantial evidence is relied upon to prove a crime, it is not required that the circumstances proven shall exclude all possibility of innocence, but only that they shall be inconsistent with any reasonable hypothesis other than that of guilt." (Citation omitted) at page 1132.

The facts of the instant case are inconsistent with any reasonable hypothesis other than that of guilt. Therefore, this assignment of error is without merit.

The second assignment of error is that trial court erred in overruling the defendant's demurrer to amended information, motion to quash the amended information, demurrer to the evidence, motion for directed verdict, and motion for a new trial, it not being alleged or proved beyond reasonable doubt that the alleged offense was perpetrated by an act not enumerated in 21 O.S. Supp.1974, § 701.1.

In the case at bar the defendant was originally charged with the crime of Murder in the First Degree, in violation of 21 O.S. Supp.1974, § 701.1 ¶ 8 which provides as follows:

> "701.1 *Murder in the first degree.*— Homicide, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being, is murder in the first degree in the following cases:
>
> " * * *
>
> "(8) When perpetrated against two or more persons arising out of the same transaction or occurrence or series of events closely related in time and location;" * * *

A preliminary hearing was held on September 30, 1975, and the defendant was bound over to answer to the charge of

Murder in the First Degree. Then on May 10, 1976, a hearing on motions was held, and the court granted leave to the State of Oklahoma to file an amended information. The effect of this amended information was to change the charge of Murder in the First Degree to Murder in the Second Degree, in violation of 21 O.S.Supp.1974, § 701.2, which provides as follows:

"701.2 *Murder in the Second Degree* Homicide is murder in the second degree in the following cases:

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of a person, or of any other human being, but by an act not enumerated in the preceding section;"
\* \* \*

We initially observe that an information may be amended as provided in 22 O.S.1971, § 304:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

This statute clearly allows the State to amend its information. The only requirement placed on the State is that the information cannot be amended as to substance or form if it would result in material prejudice to the defendant. See, *Bowen v. State*, Okl.Cr., 497 P.2d 1094 (1972); *Cody v. State*, Okl.Cr., 376 P.2d 625 (1962); *Raybourn v. State*, Okl.Cr., 339 P.2d 539 (1959). Upon reviewing the record we find that the defendant has failed to show that the amendment to the information resulted in material prejudice to him.

The effect of the amendment was to charge the defendant with the murder of one person instead of two persons. With the exception of this one change, the facts of the charge remain the same. The defendant was not misled; the amendment did not have the effect of confusing the defendant as to the nature of the charge against him. There has been no showing that this amendment affected the ability of the defendant to present his defense or otherwise prepare for trial. Therefore, since the amendment to the information did not result in material prejudice to the defendant, the amendment to the information was proper.

The defendant's argument is that because he was charged with Murder in the First Degree before the information was amended to Murder in the Second Degree the District Attorney must prove at trial that the defendant did not commit the act of Murder in the First Degree. The defendant has failed to cite any authority in support of his contention that the District Attorney has such a duty. His argument is based upon 21 O.S.Supp.1974, § 701.2, which provides that for an act to constitute Murder in the Second Degree, it must not be an act enumerated in 21 O.S.Supp.1974, 701.1, Murder in the First Degree. This Court has previously held that the provisions of Section 701.1 are exclusive of the provisions of Section 701.2. See, *Murray v. State*, Okl.Cr., 528 P.2d 739 (1974). Evidence which is submitted at trial which supports only a conviction of Murder in the Second Degree would not support a conviction of Murder in the First Degree. In the case at bar, the evidence at trial only supported a conviction of Murder in the Second Degree. The evidence clearly showed that there was only one victim, and not multiple victims, which would require a prosecution under Section 701.1. The act of murder committed by the defendant was not an act enumerated in Section 701.1, and the defendant's suggestion that the District Attorney must affirmatively prove that fact is untenable. His responsibility was to prove beyond a reasonable doubt that the defendant committed the crime of Murder in the Second Degree. He met that responsibility. Therefore, this assignment of error is without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is *AFFIRMED*.

BLISS and BRETT, JJ., concur.