2022 IL App (1st) 210508-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
November 22, 2022

No. 1-21-0508

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CR 15946 01 |
| | ) | |
| JUSTIN WALKER, | ) | The Honorable |
| | ) | Thomas J. Byrne, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* Summary dismissal of postconviction petition asserting claim that petitioner's state constitutional rights were violated by his arrest pursuant to investigative alert is reversed and remanded for second-stage postconviction proceedings.

¶ 2    Petitioner Justin Walker appeals from the trial court's summary dismissal of his *pro se* postconviction petition. On appeal, he contends that his petition presented arguable claims that his state constitutional rights were violated by (1) his arrest pursuant to an investigative alert instead of a warrant and (2) the prohibition under truth-in-sentencing laws on his ability to earn good-conduct credit to reduce his 30-year sentence for an offense committed at age 17. For the reasons

that follow, we reverse this summary dismissal and remand for second-stage proceedings.

¶ 3                                    BACKGROUND

¶ 4        Petitioner was convicted in a jury trial of first-degree murder for the death of Clarence "Red" Harrington in 2008. The evidence adduced at petitioner's trial is set forth in detail in this court's order on direct appeal. *People v. Walker*, 2015 IL App (1st) 123369-U. We summarize here only that evidence necessary to an understanding of the case and the issues involved in this appeal.

¶ 5        Prior to trial, petitioner moved to quash his arrest and suppress evidence on the grounds that, *inter alia*, there was no probable cause for his arrest. He asserted that the only information leading to his arrest had been given to police by Lakesha Royal after she was arrested on an unrelated narcotics search warrant on April 4, 2008. He alleged that, on April 21, 2008, the Chicago Police Department had issued an "Investigative Alert" for petitioner but never obtained a warrant for his arrest. Petitioner was arrested the following day. He subsequently made statements to police and was identified in a lineup as having been present when Harrington was robbed and beaten.

¶ 6        At the suppression hearing, two detectives from the Chicago Police Department testified about their respective interviews of Royal. Detective John Valkner testified that Royal recounted that in January 2008, the janitor at her apartment building knocked on her door and told her that four people were on the second floor beating a man. Royal went there and saw four young black males, whom she did not know but recognized as a group that sometimes loitered in her apartment building, run down the stairs out of the building. Royal did not see any of them touch or take anything from the victim and only saw them running. Detective Reuben Weber testified that Royal told him she had seen the four men beating Harrington and identified petitioner in a photo array as one of the offenders she saw fleeing the scene.

¶ 7        Also testifying at the suppression hearing was Detective Michael Landando, who testified

that after receiving the above information he went to the apartment building and spoke to James "JB" Williams, who recounted witnessing a group of four young black males that regularly loitered in the apartment building standing over a person laying on the floor, beating and punching him. Williams knocked on Royal's door to get help in breaking up the fight, whereupon the four offenders ran away. Williams showed Detective Landando and his partner the location where this had occurred, and the detectives observed blood splatter on the carpets and baseboards. Detective Landando testified that, after attempting for 10 days to locate petitioner near his home, he issued an "investigative alert with probable cause" for petitioner's arrest. He did this based on the identification by Royal, the corroborating interview with Williams, and the evidence recovered. Petitioner was arrested the following day, based solely on the investigative alert. Upon his arrest, petitioner made statements to police and was identified in lineups by both Royal and Williams. At the conclusion of the hearing, the trial court found that probable cause had existed at the time petitioner's arrest and denied his motion to quash and suppress evidence.

¶ 8        The case proceeded to trial. The evidence showed that on January 6, 2008, Harrington was found unconscious in the hallway of an apartment building on South Mason Street in Chicago. He was transported to the hospital with injuries consistent with having been beaten and kicked. He died as a result of these injuries on March 9, 2008.

¶ 9        Royal and Williams both testified. Williams testified that he was the building's janitor and was working when he heard a noise from the second-floor hallway. He knocked on Royal's door to find help. Royal testified that she went to the second floor and saw "someone standing there and someone lying there," although all she could see "was his feet." She identified the man standing as petitioner, whom she had seen several times in the lobby of the building. She then ran back to her apartment and did not report the incident until she was arrested on narcotics charges in April

2008. Williams testified that he went out the back of the building and came around to the front, where he saw petitioner coming out the front door. He accompanied emergency responders to the victim, who was laying on his back and bleeding, with his pockets inside out. Both Royal and Williams testified to identifying petitioner in a lineup as the man they had seen that day.

¶ 10    William Howard testified that he was also charged with first-degree murder involving the same incident and was testifying pursuant to a plea agreement. He lived in the same apartment building with petitioner, and the two were friends. On the day at issue, Howard was in the lobby of the apartment building on South Mason Street when petitioner arrived with Nathan Clark. They began to talk, and petitioner asked Howard if he wanted "to hit this thing with us?" or do a "stain," which Howard explained meant getting some money in some way. Howard declined but agreed to be a lookout for petitioner and Clark. He then saw them go upstairs and return 30 to 45 minutes later, running down the stairs and out the door. Howard followed them, and when they stopped, he saw that petitioner's knuckles were red, "like he just punched someone."

¶ 11    Detective Robert Cordero of the Chicago Police Department testified, corroborating much of Detective Landando's testimony from the motion to suppress. Briefly, they received the case following the victim's death, interviewed Royal and Williams, and went to the apartment building where they saw blood splatter in the second-floor hallway. After unsuccessfully searching for petitioner for several days, they issued an investigative alert, and he was arrested the next day. He was brought to the police station where he was questioned and gave a statement. A video showing a portion of the conversation between petitioner and the detectives was then allowed into evidence and played for the jury. Before this occurred, Detective Cordero testified that petitioner had provided three different versions of events. First, he said that a man named Shannon Carr had approached him about accompanying him to the second floor of the apartment building, where

they came upon the victim. Carr then started to "steal on him," that is, punch him and knock him to the ground. Petitioner stated he became alarmed, stopped Carr, and ran away. In the second version of events, petitioner agreed only to be a lookout while Carr performed a "stain," which he confirmed meant a robbery, and he did not strike or take any money from the victim. In the third version of events, petitioner stated that he was the lookout for Carr and Clark, that he saw money in the victim's hands once they started beating him, that he grabbed the money totaling $23, and that all three of them fled the building. On cross-examination, Detective Cordero affirmed that petitioner consistently maintained that he had never touched the victim and that he had tried to pull Carr off the victim after Carr started beating him.

¶ 12      In the defense case-in-chief, petitioner presented Howard's plea agreement for impeachment purposes and then rested. The jury then returned a verdict finding petitioner guilty of first-degree murder. At the sentencing hearing, the trial court set forth the sentencing range and stated that whatever sentence was imposed had to be served at 100% under truth-in-sentencing provisions. It then stated that it was considering petitioner's "extreme youth" as relevant to his potential for rehabilitation. It concluded by stating that a sentence at the statutory minimum of 20 years "would not be sufficient" and that a 30-year sentence was appropriate "based upon his youth."

¶ 13      On direct appeal, petitioner argued among other things that the trial court erred in denying his motion to suppress based on a lack of probable cause. As part of that argument, he asserted that the investigative alert, which formed the sole basis of his arrest, was not comprised of sufficient evidence to justify the belief that a law had been broken and that he was the one who broke it. This court rejected that argument, holding that the "clear and consistent evidence from multiple sources" was "sufficient to provide probable cause for [petitioner's] warrantless arrest via the investigative alert." *Id.* ¶¶ 29, 34. The Illinois Supreme Court denied leave to appeal. *People v.*

*Walker*, No. 119272, 39 N.E.3d 1010 (Ill. Sep. 30, 2015) (Table).

¶ 14      On December 10, 2020, the present petition for postconviction relief was docketed in the circuit court, in which petitioner raised two claims. First, he asserted that his arrest violated article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) because it was based on an investigative alert rather than on the presentation of sworn facts to a judge. He stated that he was advancing this claim based upon this court's opinion in *People v. Bass*, 2019 IL App (1st) 160640, *aff'd in part, vacated in part*, 2021 IL 125434. Second, he asserted that the truth-in-sentencing law that required him to serve 100% of the 30-year sentence imposed on him as a 17-year-old was unconstitutional. See 730 ILCS 5/3-6-3(a)(2)(i) (West 2012).

¶ 15      On February 24, 2021, the trial court entered an order finding both claims to be frivolous and patently without merit. As to the first claim, the trial court found that it failed for three reasons: (1) *Bass* was not decided until seven years after petitioner's conviction in 2012, and prior to *Bass* no court had held that warrantless arrets pursuant to investigative alerts were unconstitutional; (2) any new rule of criminal procedure announced in *Bass* that warrantless arrests based on investigative alerts violate the state constitution would not be retroactive to petitioner's case on collateral review; and (3) subsequent decisions of the appellate court have held that the reasoning of *Bass* was flawed and that the use of investigative alerts does not violate the constitution as long as there is probable cause. As to his second claim, the trial court reasoned that (1) even though petitioner was not eligible for parole under truth-in-sentencing provisions, his 30-year sentence was not an unconstitutional life sentence; (2) the authority on which petitioner primarily relied had been subsequently vacated (see *People v. Othman*, 2019 IL App (1st) 150823, *vacated in part*, No. 125580 (Ill. Jan. 9, 2020) (supervisory order)); and (3) the trial court took petitioner's youth and its attendant characteristics into account when it imposed his sentence. Accordingly, the trial court

summarily dismissed petitioner's petition. This appeal followed.

¶ 16                                              ANALYSIS

¶ 17          The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a three-stage process for imprisoned individuals to raise constitutional challenges to their convictions or sentences. *People v. Hatter*, 2021 IL 125981, ¶ 22. This case involves the first stage, in which the trial court examines the filed petition to determine whether it "is frivolous or is patently without merit" and must summarily dismiss a petition it determines to meet this standard. 725 ILCS 5/122-2.1(a)(2) (West 2020); see *People v. Brown*, 236 Ill. 2d 175, 184 (2010). A petition should be summarily dismissed under this standard "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition that lacks an arguable basis in law or in fact is one "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. The threshold for a petition to survive summary dismissal is low. *Hatter*, 2021 IL 125981, ¶ 23. The allegations of the petition, taken as true and liberally construed, must present the gist of a constitutional claim. *Id.* ¶ 24. Our review is *de novo*. *Id.*

¶ 18          Petitioner's first argument on appeal is that his postconviction petition presented a claim with arguable merit that his 2008 arrest pursuant to an investigative alert was unconstitutional, because the police did not obtain an arrest warrant from a judge despite having more than a week and a half to do so. He does not dispute that probable cause existed as of the time of his arrest, and this court has previously held on direct appeal that it did. *Walker*, 2015 IL App (1st) 123369-U, ¶¶ 29, 34. Rather, he argues that despite probable cause existing, his arrest pursuant to an investigative alert violated his rights under article I, section 6 of the Illinois Constitution, which provides:

          "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions

of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

¶ 19    An "investigative alert" is the name of a method used within the Chicago Police Department to communicate that an individual is wanted for a specific crime if he or she happens to be stopped by an officer. See *Sanders v. Cruz*, No. 08 C 3318, 2010 WL 3004636, *3 (N.D. Ill. July 29, 2010). The record discloses that the type of investigative alert used in petitioner's case was an "investigative alert with probable cause." This constitutes a determination by the police department that probable cause exists for the individual to be arrested, although the police have neither obtained a warrant for the individual's arrest nor presented a sworn affidavit to a magistrate. See *People v. Hyland*, 2012 IL App (1st) 110966, ¶ 45 (Salone, J., specially concurring).

¶ 20    As of the date of issuance of this decision, the argument that arrests made pursuant to investigative alerts are unconstitutional has some support in case law and is therefore not "indisputably meritless." In *People v. Smith*, 2022 IL App (1st) 190691, ¶¶ 66, 99, a divided panel of this court held that a defendant's arrest pursuant to an investigative alert violated the state constitution, despite the fact that probable cause existed, where the police did not obtain a warrant despite having had six months to do so. The *Smith* majority reasoned that the language of article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) contemplates a neutral magistrate making a finding of probable cause based on facts presented in a sworn "affidavit" and thereupon issuing a warrant; and arrests based on investigative alerts, in which the police department makes its own probable cause determination without swearing to facts before a magistrate, violate that requirement. *Smith*, 2022 IL App (1st) 190691, ¶¶ 90, 95.

¶ 21    The defendant in *Smith* was convicted of murder and mob action. His sole claim on direct

appeal was that his motion to suppress should have been granted because his arrest was made pursuant to an investigative alert, based upon a detective's determination of probable cause, rather than on a determination of probable cause made by a neutral magistrate and supported by an "affidavit." *Id.* ¶¶ 48, 52. He did not dispute that probable cause existed for his arrest. *Id.* ¶ 52.

¶ 22    The *Smith* majority began its analysis by discussing the reasoning and subsequent procedural history of *Bass*, 2019 IL App (1st) 160640, which was the first case in which a panel of this court held that arrests pursuant to investigative alerts violate the state constitution. *Smith*, 2022 IL App (1st) 190691, ¶¶ 54-68. It acknowledged that the supreme court had vacated the portion of the appellate court's decision in *Bass* that had addressed the constitutionality of investigative alerts, affirming on different grounds. *Id.* ¶¶ 62-64 (citing *Bass*, 2021 IL 125434, ¶¶ 29-31). The *Smith* majority also acknowledged that other panels of this court had disagreed with the holding of the appellate court majority in *Bass* that investigative alerts were unconstitutional. *Smith*, 2022 IL App (1st) 190691, ¶ 65 (citing *People v. Braswell*, 2019 IL App (1st) 172810, ¶ 37; *People v. Simmons*, 2020 IL App (1st) 170650; *People v. Thornton*, 2020 IL App (1st) 170753; *People v. Bahena*, 2020 IL App (1st) 180197, ¶¶ 61-64). However, the *Smith* majority stated that it was not bound by those decisions and thus proceeded to its own analysis. *Smith*, 2022 IL App (1st) 190691, ¶ 65.

¶ 23    Upon doing so, the *Smith* majority recognized that the fourth amendment to the United States Constitution did not require police to obtain an arrest warrant from a judge. *Id.* ¶ 68 (citing *United States v. Watson*, 423 U.S. 411, 423 (1976)). It reasoned, however, that the language of article I, section 6 of the Illinois Constitution that "[n]o warrant shall issue without probable cause, supported by affidavit" (Ill. Const. 1970, art. I, § 6) affords greater protection than the analogous requirement of the fourth amendment that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation" (U.S. Const., amend. IV). *Smith*, 2022 IL App (1st) 190691,

¶ 78. It noted that the phrase "supported by affidavit" was first included in the 1870 Constitution (see Ill. Const. 1870, art. II, § 6), and the delegates to the 1870 Constitutional Convention had intentionally selected the word "affidavit" and rejected "oath and affirmation." *Smith*, 2022 IL App (1st) 190691, ¶ 80. It went on to reason that several supreme court cases had then "interpreted the 'affidavit' language in our state constitution as contemplating the crucial role of a magistrate in the determination of probable cause necessary to issue a warrant." *Id.* ¶ 85 (citing *Lippman v. People*, 175 Ill. 101, 112-13 (1898), and *People v. Elias*, 316 Ill. 376, 381 (1925)).

¶ 24     The *Smith* majority found persuasive the case of *People v. McGurn*, 341 Ill. 632 (1930), which involved a defendant's conviction for carrying a concealed revolver that had been discovered on his person during an arrest later found unlawful by the supreme court. *Smith*, 2022 IL App (1st) 190691, ¶¶ 86-89. The arrest giving rise to the discovery of the revolver in *McGurn* did not occur because the arresting officer believed the defendant had committed or was in the process of committing any crime; rather, the arresting officer stated he was acting under the orders of a superior officer to arrest the defendant, despite the absence of any warrant or process of law for the defendant's arrest. *McGurn*, 341 Ill. at 637-38. The arresting officer referred to this in his testimony as a "standing order." *Id.* at 635. The *Smith* majority quoted the supreme court's statement in *McGurn* that, under the state constitution, " 'no municipality has authority to clothe any officer with the autocratic power to order the summary arrest and incarceration of any citizen without warrant or process of law and thus render the liberty of every one of its citizenry subject to the arbitrary whim of such officer.' " (Emphasis omitted.) *Smith*, 2022 IL App (1st) 190961, ¶ 89 (quoting *McGurn*, 341 Ill. at 638).

¶ 25     Ultimately, the *Smith* majority reasoned that an arrest pursuant only to an investigative alert resembled the kind of arrest that had been held unlawful in *McGurn*. *Id.* ¶ 94. It reasoned that in

the arrest before it, similar to *McGurn*, the arresting officer had neither observed the defendant committing a crime nor had knowledge of the crime he had allegedly committed, and the sole basis of the officer's decision to arrest the defendant was the investigative alert issued by another detective. *Id.* ¶¶ 94-95. The majority also emphasized that in the case before it, six months had elapsed between the issuance of the investigative alert and the defendant's arrest, during which time the police could have sought a warrant but made no attempt to do so. *Id.* ¶ 96. The majority suggested that investigative alerts could be permissible for shorter time periods of approximately 24 to 48 hours if probable cause existed to suspect that a subject might commit further crimes or be a flight risk, but it stated that this was not the situation in the case before it. *Id.* ¶ 97.

¶ 26    Despite engaging in the above analysis, the majority in *Smith* concluded that, notwithstanding the unconstitutionality of the defendant's arrest, the admission of evidence derived from that arrest was harmless error, and it affirmed the conviction on that basis. *Id.* ¶ 101. Justice Coghlan issued a special concurrence, in which she agreed that the defendant's conviction should be affirmed but disagreed that the constitutional issue should have been reached. *Id.* ¶ 115 (Coghlan, J., specially concurring). Justice Coghlan found that the arrest of the defendant did not violate the Illinois constitution because it was supported by probable cause despite the fact that a warrant had not been obtained. *Id.* ¶¶ 117-19 (Coghlan, J., specially concurring).

¶ 27    Relying on *Smith*, which we allowed petitioner to cite as supplemental authority, petitioner contends that there is clear arguable merit to his claim that his arrest violated the state constitution simply because it was made pursuant to an investigative alert and not a warrant, regardless of the existence of probable cause. We agree with petitioner that, in light of the majority's opinion in *Smith*, it cannot be said at this stage that such a constitutional claim is frivolous or patently without merit. Accordingly, we reverse and remand for second stage postconviction proceedings.

¶ 28      In doing so, we wish to make several points that may become pertinent as this case proceeds. This case comes to us for decision at a moment when, due to the majority's opinion in *Smith*, support exists in the case law for the constitutional argument raised by petitioner that requires us to advance this case for further proceedings. We note, however, that the supreme court has accepted a petition for leave to appeal in a case in which one of the arguments raised is that the defendant's arrest violated the state constitution because it was made pursuant to an investigative alert and not a warrant. *People v. Dossie*, 2021 IL App (1st) 201050-U, *appeal allowed*, No. 127412 (Ill. Sep. 29, 2021). Thus, the decision in *Dossie* could affect the continued merit of the constitutional argument made by petitioner here.

¶ 29      Second, we note that one of the bases upon which the trial court summarily dismissed petitioner's claim was that the rule from which he sought to benefit is one that would not apply retroactively to his case on collateral review. See *Teague v. Lane*, 489 U.S. 288 (1989). However, the State did not argue for affirmance on this ground, and we decline to consider the applicability of this principle here in the absence of argument or briefing by the parties.

¶ 30      Finally, the State argues that regardless of the constitutionality of petitioner's arrest, suppression of his post-arrest statements to police and lineup identification is unwarranted under the good-faith exception to the exclusionary rule. The good faith exception to the exclusionary rule is a judicially created rule providing that evidence obtained in violation of a defendant's fourth amendment rights will not be suppressed when police acted with an objectively reasonable good-faith belief that their conduct was lawful, or when their conduct involved only simple, isolated negligence. *People v. Bonilla*, 2018 IL 122484, ¶ 35; see also *People v. LeFlore*, 2015 IL 116799, ¶ 24. According to the State, the police in this case acted in objectively reasonable good-faith reliance upon the legal landscape that existed at the time of petitioner's arrest, which permitted the

use of investigative alerts supported by probable cause to effectuate an arrest. See *LeFlore*, 2015 IL 116799, ¶ 31. However, we agree with petitioner's argument that it would be premature for us to affirm first-stage summary dismissal on this basis. More information and evidence would be necessary about the procedures by which investigative alerts are issued and executed, both in general and in petitioner's case specifically, before the court could conclude that the good faith exception to the exclusionary rule applies.

¶ 31    As mentioned above, petitioner's postconviction petition also included a second claim that the truth-in-sentencing provisions that required him to serve 100% of the 30-year sentence imposed on him as a 17-year-old was unconstitutional. However, based on our conclusion that petitioner's first claim should be advanced for second stage proceedings, we do not need to separately address the merits of this second claim. If a postconviction petition is comprised of multiple claims and one of them survives the summary dismissal stage, the entire petition is docketed for second-stage proceedings regardless of the merits of the other claims. *People v. Romero*, 2015 IL App (1st) 140205, ¶ 27 (citing *People v. Rivera*, 198 Ill. 2d 364, 371 (2001)).

¶ 32                                     CONCLUSION

¶ 33    For the reasons set forth above, we reverse the trial court's summary dismissal of petitioner's *pro se* postconviction petition and remand this case for further proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(b) (West 2020)).

¶ 34    Reversed and remanded.